54 Mass. App. Ct. 405 (2002)                                    405

Tri-County Youth Programs, Inc. *v.* Acting Deputy Director of the Div. of Employment & Training.

TRI-COUNTY YOUTH PROGRAMS, INC. *vs.* ACTING DEPUTY
DIRECTOR OF THE DIVISION OF EMPLOYMENT AND TRAINING
& another.[1]

No. 99-P-625.

Hampden. November 13, 2000. - April 9, 2002.

Present: BROWN, GREENBERG, & GELINAS, JJ.

*Administrative Law,* Judicial review, Agency's interpretation of statute, Substantial evidence, Standard of proof. *Employment Security,* Eligibility for benefits, Burden of proof, Findings.

Discussion of the standards of review applicable to findings and decisions of the board of review of the division of employment and training as established in G. L. c. 151A, § 42, the employment security statute. [407-408]

This court concluded that the findings of the board of review of the division of employment and training were neither inconsistent with the board's conclusion that a female employee in a residence for emotionally troubled adolescents had been subject to sexual harassment, creating a hostile, humiliating, or sexually offensive work environment, nor unsupported by substantial evidence. [408-410]

In a proceeding before the board of review of the division of employment and training, a female employee in a residence for emotionally troubled adolescents, who was assigned to work in the same residential facility that housed an adolescent who had previously sexually assaulted her, sustained her burden of proof under G. L. c. 151A, § 25(*e*), by showing that she left work with good cause attributable to her employer (i.e., sexual harassment), and was not required, in such circumstances, to demonstrate that she took reasonable steps to preserve her employment. [410-412]

There was no merit to an employer's argument that it was not only a foreseeable risk but clearly a reasonable probability that a female employee hired to work with emotionally troubled adolescents would be sexually assaulted by one of the adolescents and that the employee's assuming the risk of sexual assault diminished the ability of the board of review of the division of employment and training to deal with the employee's contention that she terminated her employment voluntarily, but for good cause, due to sexual harassment and the resultant creation of an intimidating, humiliating, and sexually offensive work environment within the meaning of G. L. c. 151A, § 25(*e*), when she was assigned to work in the same residential facility that housed an adolescent who had previously sexually assaulted her. [412-415]

[1]Denise Y. Lawrie.

CIVIL ACTION commenced in the Springfield Division of the District Court Department on June 22, 1998.

The case was heard by *Dennis J. Brennan, J.*

*Robert L. Quinan, Jr.*, Assistant Attorney General, for Acting Deputy Director of the Division of Employment & Training.

*Albert R. Mason* (*Kathleen A. Moore-Kocot* with him) for the plaintiff.

GELINAS, J. Tri-County Youth Programs, Inc. (Tri-County), appeals from a decision of the District Court affirming the decision of the board of review of the division of employment and training (board) to grant unemployment benefits to Denise Y. Lawrie (Lawrie). The board, in overturning a decision of the review examiner, concluded that Lawrie terminated her employment at Tri-County voluntarily, but for good cause, "due to sexual harassment and the resultant creation of an intimidating, humiliating and sexually offensive work environment," within the meaning of G. L. c. 151A, § 25(*e*).[2] We affirm.

*Facts.* We offer a brief summary of the facts, based upon the undisputed findings of the review examiner, adopted in full by

---

[2]The statute, as amended through St. 1992, c. 26, § 19, provides, in its first paragraph, that "no benefits shall be paid to an individual . . . after the individual has left work . . . voluntarily unless the employee establishes by substantial and credible evidence that he had good cause for leaving attributable to the employing unit or its agent . . . ."

The fourth and fifth paragraphs of § 25(*e*) provide as follows:

"An individual shall not be disqualified, under the provisions of this subsection, from receiving benefits if it is established to the satisfaction of the commissioner that the reason for leaving work and that such individual became separated from employment due to sexual, racial or other unreasonable harassment where the employer, its supervisory personnel or agents knew or should have known of such harassment.

"For the purposes of this paragraph, the term 'sexual harassment' shall mean sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when (a) submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; (b) such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance; or (c) such advances, requests or conduct have the purpose or effect of creating an intimidating, hostile, humiliating or sexually offensive work environment. The department shall promulgate regulations necessary to carry out the provisions of this paragraph."

For the pertinent accompanying regulations, see note 3, *infra.*

the board, supplementing from that source where context requires. Lawrie was hired in 1996 as a shift manager in a residence for emotionally troubled adolescents operated by Tri-County in Northampton. On November 22, 1997, in connection with her duties, Lawrie took two Tri-County clients on a shopping trip. While driving a company van, Lawrie was sexually assaulted by one of the clients, a fourteen year old male. Lawrie promptly reported the assault to her superiors. Without objection, but with no assistance from Tri-County, Lawrie reported the assault to police and pressed charges. Lawrie's assailant was arrested and placed into the custody of the Department of Youth Services (DYS). On December 4, 1997, Lawrie's supervisor informed her that her assailant would probably be returned to Lawrie's work site, with a "stay-away" order in place.

On December 10, 1997, Lawrie's assailant admitted delinquency to sexual assault, was adjudicated delinquent, and was placed on two years' probation. The court also ordered the juvenile to stay away from Lawrie and to have no contact with her. Later that day, with the assent of Tri-County, DYS returned the juvenile to the same residential facility where Lawrie worked. After discussion with her superiors, Lawrie resigned her position, effective January 7, 1998, giving as the reason her dissatisfaction with her employer's handling of the sexual assault incident. On December 15, 1997, at a meeting with her supervisor, Lawrie was informed that Tri-County had decided to make her resignation effective immediately. Lawrie made application for unemployment benefits, which were granted. Tri-County appealed, and a review examiner denied the benefits; Lawrie applied to the board for a review of the examiner's decision. The board, concluding that the examiner's decision was based on an error of law, modified the examiner's decision and awarded Lawrie benefits for the week ending December 27, 1997, and for subsequent weeks. Tri-County then petitioned the District Court to vacate the board's decision. From a judgment affirming the board's decision, Tri-County appeals to this court.

*Standards of review.* The standards of review applicable to findings and decisions of the board are established in the employment security statute, G. L. c. 151A, § 42; pursuant to the statute, the State Administrative Procedure Act, G. L. c. 30A,

408                            54 Mass. App. Ct. 405 (2002)

Tri-County Youth Programs, Inc. v. Acting Deputy Director of the Div. of Employment & Training.

§ 14, controls. Where our review is governed by the Act, we are required to give "due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it." G. L. c. 30A, § 14(7), as amended by St. 1973, c. 1114, § 3. See *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 595 (1974). We review the record "to determine whether the board applied correct legal principles in reaching its decision." *Guarino* v. *Director of the Div. of Employment Sec.*, 393 Mass. 89, 92 (1984). We look "to discover whether [the decision] contains sufficient findings to demonstrate that correct legal principles were applied, and [we] must review the record to determine whether those findings are supported by substantial evidence." *Ibid.*, citing *Lycurgus* v. *Director of the Div. of Employment Sec.*, 391 Mass. 623, 626-627 (1984). "[I]f an agency's finding of fact is supported by 'such evidence as a reasonable mind might accept as adequate to support a conclusion,' it will not be disturbed by a reviewing court." *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. at 595, quoting from G. L. c. 30A, § 1(6), as inserted by St. 1954, c. 681, § 1.

As to interpretation of statutes governing the agency, we defer to the agency's interpretation and application of the statute within which it operates. See *Hotchkiss* v. *State Racing Commn.*, 45 Mass. App. Ct. 684, 691-692 (1998). Where the agency's rules are concerned, the agency's interpretation is entitled to great weight, unless those interpretations are "arbitrary, unreasonable or inconsistent with the plain terms of the rule itself." *Finkelstein* v. *Board of Registration in Optometry*, 370 Mass. 476, 478 (1976). However, pure questions of law are "subject to de novo judicial review." *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. at 595. See G. L. c. 30A, § 14(7)(c).

*Sufficiency of the evidence.* Tri-County does not dispute that the findings of fact adopted by the board are supported by substantial evidence. Rather, it argues that the board (in adopting without change the findings of the examiner, but reaching the opposite conclusion from those findings) did not have sufficient evidence with which to conclude Lawrie had resigned

due to sexual harassment under G. L. c. 151A, § 25(*e*), and therefore she had not satisfied the burden of showing that she left with good cause attributable to the employer. Applying the standards set forth in *Guarino* v. *Director of the Div. of Employment Sec.*, 393 Mass. at 92, discussed earlier, we conclude that the board's findings were neither inconsistent with the board's conclusion that Lawrie had been subject to sexual harassment, creating a hostile, humiliating, or sexually offensive work environment, nor unsupported by substantial evidence.

More specifically, the conclusion that Lawrie left due to sexual harassment, and the examiner's (and the board's) finding that she "left her job because of dissatisfaction with the employer's handling of [the] sexual assault incident," are not inconsistent. The board specifically found that Lawrie had been sexually assaulted by her employer's client, and that this client had been criminally prosecuted and ordered to stay away from Lawrie. From these specific material subsidiary findings, the board could draw the reasonable inference that Lawrie was subject to an "intimidating, hostile, humiliating and sexually offensive work environment" when her assailant returned to the same facility where she worked and that Tri-County made "no . . . effort" to stop the creation of such an environment. In so doing, Tri-County ran afoul of G. L. c. 151A, § 25(*e*), fourth and fifth pars. (see note 2, *supra*). This conclusion accords with the finding that Lawrie left her employment because she was dissatisfied with the way her employer handled the sexual assault, and it supports the further determination that her resignation was involuntary, with good cause attributable to Tri-County.

The board's conclusion in this regard was also consistent with the finding that Lawrie would not have had "any problems in performing her job duties" even if her assailant was returned to the facility wherein she worked. It is not inconsistent for an employee to be able to perform job duties but still be working within a hostile, humiliating, and sexually offensive environment. Further, Tri-County's argument, that Lawrie failed to raise the sexual harassment issue with the initial examiner, or with the board, is contradicted by the record. Lawrie's application for further review and her counsel's oral argument to the examiner, that Tri-County's stance in taking back the offending

client without "anything in the works" for a transfer for Lawrie, were sufficient, in our view, to raise the issue that Tri-County had created a work environment that was sexually hostile.

*Burden of proof.* We reject Tri-County's argument that Lawrie failed to sustain her burden of proof. Generally, it is the employee's burden, under G. L. c. 151A, § 25(*e*) (see note 2, *supra*), to show that the employee left work involuntarily with good cause attributable to the employer, and that "he or she took reasonable steps to preserve his or her employment . . . , unless the circumstances indicate that such efforts would be futile or result in retaliation." 430 Code Mass. Regs. § 4.04(5)(c)(3)(b) (1997).[3] In cases involving allegations of sexual harassment, however, the claimant need not show that

---

[3]Title 430 Code Mass. Regs. § 4.04(5) (1997) provides in pertinent part as follows: "(a) Definitions. The following words and phrases shall have the following meanings: . . .

"2. Sexual harassment — sexual advances, requests for sexual favors, and other physical conduct of a sexual nature when, a. submission to or rejection of such advances, requests or conduct is made either explicitly or implicitly a term or condition of employment or as a basis for employment decisions; b. such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance; or c. such advances, requests or conduct have the purpose or effect of creating an intimidating, hostile, humiliating or sexually offensive work environment. . . .

"(b) Sexual, racial or other unreasonable harassment may result from conduct by the employer or the employer's agents, supervisory employees, co-employees or non-employees. Such conduct may occur on or off the worksite and on or off company time.

"(c) 1. A claimant shall not be disqualified from receiving benefits under [G. L. c. 151A, § 25(*e*)(1),] for leaving work voluntarily without good cause attributable to the employing unit or its agent if he or she establishes to the satisfaction of the Commissioner that his or her reason for leaving work and separation from employment is due to: a. sexual, racial or other unreasonable harassment by an employer, its agents or supervisory employees and the employer, its agents or supervisory employees knew or should have known of such harassment; b. In the case of a non-employee, the department will consider the extent of the employer's control over the non-employee's conduct.

"3. In all cases involving allegations of harassment (other than allegations of sexual, racial or other unreasonable harassment . . .) by an employer, its agents or supervisory employees, a claimant shall not be disqualified from receiving benefits under M. G. L. c. 151A, § 25(e)(1) if he or she establishes to the satisfaction of the Commissioner that, a. the employer, its agents or supervisory employees knew or should have known of the harassment and the employer failed to take immediate and appropriate corrective action; and b. he or she took

she took all or even "reasonable steps" to preserve her employment. The requirement is expressly excluded by G. L. c. 151A, § 25(*e*), fourth par. (see note 2, *supra*), and 430 Code Mass. Regs. § 4.04(5)(c)(3) (see note 3, *supra*). Contrast *Guarino* v. *Director of Div. of Employment Security*, 393 Mass. at 93-94 (in case of harassment due to union activities, claimant for unemployment benefits must make reasonable attempts to correct that situation). Hence, while the board explained that "the findings suggest [Lawrie] may not have taken all necessary measures to preserve her employment prior to resigning," under the statute and regulation Lawrie was not required to show that she had taken such measures.

It appears Lawrie would have sustained her burden even under the more stringent requirement. As noted, in its decision, the board concluded that Tri-County was aware of the existence of the harassment, and that, given the seriousness of the offense, it should have taken affirmative steps to transfer Lawrie permanently to another job site, but no such effort was made. The board further concluded that, given the extent of its "control over the non-employee's [client's] conduct," see 430 Code Mass. Regs. § 4.04(5)(c)(1)(b) (note 3, *supra*), Tri-County was unreasonable in expecting Lawrie to work in the same residential facility that housed the person who assaulted her. Implicit here is the board's determination that nothing in the facts found by the examiner required that Tri-County accept the return of the client, or that he be housed in the same unit where Lawrie worked. To the extent that it could have refused the client's return, or have housed him in a different facility, Tri-County had control over the client's conduct.

Tri-County further contends in this context that the board erred because it did not consider the fact that, when the client returned, he was subject to a court order to stay away from

reasonable steps to preserve his or her employment, which may include notifying the employer of the harassment, unless the circumstances indicate that such efforts would be futile or result in retaliation.

"(d) In determining whether a claimant's reason for leaving work is due to harassment, the Department will look at the totality of the factual circumstances resulting in the claimant's separation from employment, such as the nature of the alleged harassment and the context in which the alleged harassing incidents occurred."

Lawrie. This argument is unavailing; in coming to its decision the board adopted the examiner's findings of fact, which contained several references to the client's return subject to a stay away order. Inferentially, all facts found by the examiner and adopted by the board were considered by it in reaching its decision. We see nothing here that would cause us to conclude that the board acted in a manner that was arbitrary or capricious. While recognizing that the factual findings reflected some possible effort on Tri-County's part to offer Lawrie a transfer to a location where clients were female, we could not conclude that, on the record before it, the board's determination — that Tri-County's efforts in this regard were insufficient — was arbitrary or capricious.[4]

*Risk inherent in employment.* We address Tri-County's further argument that we are under obligation to consider "the absolute fact that [Lawrie] was hired to work with youths at risk, kids [who] were emotionally disturbed, victims of severe physical and sexual abuse and adolescent sex offenders," and that the conduct she experienced was not only a foreseeable risk of the job, but "clearly a reasonable probability given the client population served." Tri-County's argument suggests that Lawrie's assuming the risk of sexual assault mitigated the effect of 430 Code Mass. Regs. § 4.04(5)(c)(1)(b) and § 4.04(5)(d) (see note 3, *supra*), diminishing the board's ability to apply these regulations to her situation. Tri-County never advanced this argument before either the board or the District Court, and "a

---

[4]Further, contrary to Tri-County's suggestion that Lawrie be made to show specifically that she sought a transfer, the Supreme Judicial Court has rejected "the notion that in order to be eligible for benefits an employee must request a transfer to other work or a leave of absence." *Guarino* v. *Director of the Div. of Employment Sec.*, 393 Mass. at 94. Despite this lack of obligation on Lawrie's part, the record discloses that Lawrie and her supervisor, Elizabeth Skelton, discussed the possibility of a transfer, even if Lawrie did not specifically request a transfer or shift change. Again, according to the record, investigation into this possibility, prior to Lawrie's decision to resign, was stunted by Skelton's legitimate need to take leave due to a death in her family. Regardless, Skelton's own supervisor testified that a transfer to the female facility was not an option, and a transfer to the other male facility would pose further problems since Lawrie's assailant's brother lived at that facility. Hence, even if Lawrie had been required to meet the "reasonable steps" requirement, which she was not, the board properly could have concluded on the record as a whole that any "reasonable attempt [by Lawrie] to correct that situation . . . would have been futile." *Guarino* v. *Director of the Div. of Employment Sec.*, 393 Mass. at 93.

54 Mass. App. Ct. 405 (2002)                    413

Tri-County Youth Programs, Inc. *v.* Acting Deputy Director of the Div. of Employment & Training.

party is not entitled to raise an argument on appeal that was not raised before the administrative agency." *Boston Neighborhood Taxi Assn.* v. *Department of Pub. Utils.*, 410 Mass. 686, 693 (1991). We consider the issue, however, as it may recur and has broader policy implications. See *Attorney Gen.* v. *Brown*, 400 Mass. 826, 828 & n.4 (1987); *Commonwealth* v. *Oakes*, 407 Mass. 92, 94 n.4 (1990); *Catlin* v. *Board of Registration of Architects*, 414 Mass. 1, 7 n.7 (1992); *Foley* v. *Commonwealth*, 429 Mass. 496, 497-498 (1999).

Tri-County's argument must fail, as it leads to the untenable conclusion that possible criminal sexual assault is the price that an employee must pay to maintain employment, and that, if the employee is unprepared to accept the "reasonable probability" of such occurrences on the job, then leaving after such an incident means leaving without good cause. The section of the employment security law dealing with sexual harassment, G. L. c. 151A, § 25(*e*), fourth par. (see note 2, *supra*), suggests no such limitation on an employee's eligibility for benefits when the employee leaves for reasons of sexual harassment. Further, 430 Code Mass. Regs. § 4.04(5)(a)(2)(a) (see note 3, *supra*), by explicit language, defines sexual harassment in part as being subject to sexual conduct as "a term or condition of employment." While an employee may accept employment knowing of the possibility of the risk of sexual assault, leaving employment because of sexual assault cannot be made a basis for denial of benefits under the employment security act, if the employer does not take appropriate measures to ameliorate the situation. As the board determined, the possibility of sexual assault in the workplace places a heavy burden on the employer to take steps to create a situation favorable to the employee, and in the absence of such effort benefits will be payable. In the face of the statutory language and the thrust of the regulations, we cannot say that the board's determination in this regard was arbitrary, capricious, or unreasonable.

We note as well that the Legislature has, as a matter of social policy, abandoned the concept of assumption of the risk in negligence cases. Thus, if Lawrie had decided, upon contracting for employment, to retain the right to bring an action against the employer based on common law principles, rather than to accept coverage under the Worker's Compensation Act, G. L.

c. 152, § 66, would "proscribe[ ] voluntary or contractual assumption of the risk as a defense" in any suit brought by her as "an employee in connection with a work-related injury." *Gonsalves* v. *Commonwealth*, 27 Mass. App. Ct. 606, 609 (1989). See *Brown* v. *Leighton*, 385 Mass. 757, 760 (1982). More generally, in 1973, the Legislature amended the comparative negligence statute, G. L. c. 231, § 85, as appearing in St. 1973, c. 1123, abolishing assumption of the risk as a defense in negligence actions. See *Forte* v. *Muzi Motors, Inc.*, 5 Mass. App. Ct. 700, 704 n.7 (1977).

For those public employees especially susceptible to assaults, such as police, correction officers, or employees of State mental hospitals, there is a special statutory provision to compensate them for suffering such assaults *in addition* to their receipt of workers' compensation. See G. L. c. 30, § 58; *Chambers* v. *Lemuel Shattuck Hosp.*, 41 Mass. App. Ct. 211, 211-212 (1996); *Moog* v. *Commonwealth*, 42 Mass. App. Ct. 925, 925-926 (1997). While these employees could be said to "assume the risk" of working in such less-then-desirable conditions day after day, by explicit reference to such risks in their contracts of employment, they do not, by statute, assume the risk in the sense that they receive no compensation for foreseeable injury in the line of duty. Further, the public sector employer could still be held liable for failing to do all that is possible to make the working conditions as safe as possible against sexual assaults in accordance with G. L. c. 151A, § 25(*e*).

Those employed in the private sector, although fulfilling duties similar in nature to some described above, are not entitled to the additional compensation provided by G. L. c. 30, § 58. It does not follow, however, that they should suffer the risk of loss of unemployment benefits occasioned by the type of employment they accept.

From the record, Tri-County's argument in this regard faces an additional acclivity. Tri-County has in place a detailed protocol for the "Risk Management and Treatment of Adolescent Sex Offenders," precisely to exert appropriate control over the behavior of clients like the assailant. This protocol states, "We believe the specialized assessment and treatment performed by

those who are trained in working with adolescent sex offenders is [*sic*] the first step to be taken if sexual assault and its consequences are to be addressed properly. We assume a responsibility to protect the safety and well-being of other clients, many of whom are victims, and Tri-County staff from the possibility of victimization of those who have been identified as sexual offenders."[5] The existence of this protocol suggests that Tri-County has acknowledged the responsibility of shielding its employees from risk. The protocol's existence further supports the board's determination that Tri-County failed in its duty to make suitable arrangements for Lawrie's protection and continued employment.

The District Court judge did not err in affirming the decision of the board.

*Judgment affirmed.*

---

[5]We cannot determine from the record when this protocol was first adopted. Lawrie testified that she had never seen the document until the hearing. While the protocol speaks in general terms of the protection of staff and clients, nothing in the record rebuts Lawrie's contention that Tri-County lacked procedures for dealing with adolescent sex offenders who victimized others.