MacDonald, D. Lloyd, J.
This case involves a challenge to the Department of Transitional Assistance’s (“DTA’s”) regulations concerning its Emergency Assistance (“EA”) shelter program, as well as to the DTA’s “unlawful patterns and practices” regarding its implementation of the EA program. This case is also an appeal, pursuant to G.L.c. 30A, §14(7), of the DTA’s decision to terminate plaintiff Noemi Rivera’s (“Rivera’s” or “plaintiffs”) EA benefits on the grounds that one of her family members was engaging in or had engaged in criminal activity.
In her prayer for relief, Rivera asks the court to issue a temporary restraining order and also issue a preliminary injunction enjoining the defendants, the DTA and John Wagner, as Commissioner of Transitional Assistance (collectively referred to throughout this memorandum as the DTA) from terminating her EA benefits; reverse the DTA’s decision to terminate her EA benefits, pursuant to G.L.c. 30A, §14(7) and 42 U.S.C. §1983; declare the rights of the parties, pursuant to G.L.c. 231A; and grant her the costs of the litigation, including reasonable attorneys fees, pursuant to 42 U.S.C. §1988.
For the reasons stated below, the Court DENIES the plaintiffs motion and related prayers for relief and ALLOWS the defendants’ cross motion.
Facts Pertinent to the 30A Appeal and the Complaint for Declaratory Relief
As of March 2002 the plaintiff and her family were homeless residents of the DTA’s shelter at 22 Brenton Street in Dorchester administered by the Children’s Services of Roxbury, Inc. (“CSR”). On March 31st the Boston Police responded to a report of a break-in at the neighboring address of 24 Brenton Street. Among items reported stolen were a children’s bicycle, a VCR and various other items. One of the plaintiffs sons was seen to be riding the bicycle, and when questioned by the police about it, the plaintiff acknowledged that she had seen the bike in her apartment.
The CSR staff further investigated, and on April 9th the plaintiff was served with a notice of termination by CSR based on “your family’s involvement in criminal activities,” citing the police report. The notice referred to such conduct as a “violation of the Participation and License Agreement,” in accordance with which the plaintiff was living at the CSR residence. In that agreement grounds for termination were described as “extreme situations such as criminal behavior, violence, damage to property and the disturbance of others.” The notice included notification of a right of appeal of the CSR’s eviction decision. The plaintiff did appeal.
Pursuant to that appeal, on April 12th a hearing was held at CSR, with the plaintiff, whose native language is Spanish, assisted by a Spanish-speaking advocate. Evidence was presented, and on April 17th a decision issued confirming the grounds for termination and further noting the plaintiffs “inability ... to control her children” and her “lack of supervision and an apathetic attitude.” The plaintiff and her family’s conduct “caused another participant family distress.”
The plaintiff was then required to vacate the CSR residence, but DTA provided the plaintiff with alternative emergency housing in Revere. However, on May 2nd DTA notified the plaintiff that she was terminated from DTA housing altogether because of her family having “engaged in criminal activity that threatens the health, safety and/or security" of residents.
The DTA’s termination notice also included advice of a right of appeal, which plaintiff exercised. Accordingly, a hearing was held before a DTA hearing officer on June 14th. The plaintiff was assisted by a paralegal from Greater Boston Legal Services. On June 17th the hearing officer’s decision was rendered.
The hearing officer found “by a preponderance of the evidence” that the plaintiff or a family member “had engaged in criminal activity” in violation of the DTA’s regulations, thus forfeiting her entitlement to EA shelter. The hearing officer concluded that the plaintiffs version of events “is not credible.” The hearing officer cited DTA regulation 106 CMR 309.040(F), which provided for termination when the resident “is asked to leave a temporary emergency shelter because there is reasonable cause to believe that a member(s) of the EA assistance unit is engaging in or engaged in a criminal activity that threatens the health, safely and/or security of self, other residents, guests and/or the staff of the temporary emergency shelter.”
The Court addresses first the plaintiffs 30A appeal.
*106 Standard of Review
Pursuant to G.L.c. 30A, §14, the Court may modify or set aside an agency’s determination if there was a violation of constitutional provisions or if the decision was in excess of statutory authority, based on an error of law, made upon an unlawful procedure or unsupported by substantial evidence or otherwise unwarranted on the record. The court may also allow the appeal if the agency’s action was “arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.”
On factual matters, the reviewing court is required to give “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it.” Id., §14(7). See Thomas v. Civil Service Commission, 48 Mass.App. 446, 451 (2000); Tri-County Youth Programs, Inc. v. Acting Deputy Dir. of the Div. of Employment and Training, 54 Mass.App.Ct. 405, 408 (2002). The agency’s decision, however, must be supported by substantial evidence. G.L.c. 30A, §14(7). “Substantial evidence” means such evidence as a reasonable mind might accept as adequate to support a conclusion. Id., §1(6). When applying the substantial evidence standard, the Court considers the record as a whole. The Black Rose, Inc. v. City of Boston, 433 Mass. 501, 503 (2001). As long as the findings are properly supported, “[the decision] will not be disturbed by a reviewing court.” Tri-County Youth Programs, Inc., 54 Mass.App.Ct. at 408.
30A Merits on the Facts
Having reviewed the entire record before the hearing officer, it is clear that there was substantial evidence to support the hearing officer’s decision. The plaintiff and her oldest daughter testified that on the day of the alleged theft the plaintiffs seven-year-old son (not the nine-year-old son accused in the police report) had taken the bicycle and a basketball alleged to have been stolen. The plaintiff and her daughter claimed that the items had been taken from the victim neighbor’s open porch. I.e., they acknowledged the child’s possession of the stolen property, but they denied that either child had broken into the neighbor’s residence. The plaintiffs account was contradicted by the documentary record of the police report and the CSR investigation as presented at the CSR hearing.
The DTA hearing officer was thus faced with a credibility determination, and he made it adversely to the plaintiff. Under such circumstances, this Court is in no position to substitute its judgment for the hearing officer’s. Cobble v. Comm’r of the Dept. of Social Services, 430 Mass. 385, 391 (1999). Accordingly, the plaintiffs 30A appeal on the evidentiary record is denied.
30A Issues of Law and Grounds for Declaratory Relief
As noted earlier, the plaintiff challenges more broadly the legality of the termination of her EA benefits on a number of grounds. They will be addressed in order.
Juvenile Conduct and “Criminal Activity”
The plaintiff argues that under 106 CMR §309.040(F)(1)(A) the activity that may give rise to termination of benefits must be “criminal activity.” Since both of her children who were implicated in the alleged theft were seven and nine, respectively, the plaintiff submits that their conduct by definition was not “criminal.” The plaintiff cited G.L.c. 119, §74 (“no criminal proceeding shall be begun against any person . . . prior to his seventeenth birthday”).
The plaintiff failed to quote, however, the introductory phrase to that same provision, to wit, “Except as hereinafter provided and as provided in sections 52 to 84, inclusive.” And G.L.c. 119, §52 defines a “delinquent child” as “a child between seven and seventeen who . . . commits any offence against a law of the commonwealth” (emphasis added). The latter is a reference to the criminal law of the Commonwealth.
Further, when a court is faced with an ambiguous or otherwise unclear statute or regulation, a court is to construe its meaning with an eye to “the mischief or imperfection to be remedied and the main object to be accomplished [such) that the purpose of its framers may be effectuated.” O'Brien v. Director of the Div. of Employment Security, 393 Mass. 482, 487-88 (1984), quoting from Industrial Fin. Corp. v. State Tax Comm’n, 367 Mass. 360, 364 (1975).
In the context of addressing analogous issues that related to the termination of public housing benefits arising under G.L.c. 138, §19 and G.L.c. 121B, §32, the SJC described the purpose of the legislation as being “to provide for the speedy removal of tenants who commit any of the criminal acts described.” New Bedford Housing Authority v. Olan, 435 Mass. 364, 371 (2001). And in her concurring opinion affirming the availability in appropriate circumstances of preliminary injunctive relief to evict problem tenants pending the subject tenants’jury trial, the late Justice Sosman noted “the Legislature’s determination that violence in public housing projects be remedied swiftly for the benefit of all who live and work there.” Id. at 376.
Here, there is a similar regulatory/statutory objective to remove tenants committing dangerous criminal acts to the risk and detriment of their neighbors in the shelter. To rule that EA tenants could not be terminated for the otherwise criminal acts of their juvenile family members would defeat such an objective. As the Attorney General aptly argued in her initial opposition memorandum in this case, to interpret the regulation as urged by the plaintiff would “wreak havoc at emergency shelters and permanent public housing projects.” The Court chooses not to do so.
*107 Adequacy of Notice
The plaintiff claims that she was given insufficient notice to afford her a “reasonable opportunity to prepare and present evidence and argument” as required by G.L.c. 30A, §11(1) and federal constitutional standards, citing Goldberg v. Kelly, 397 U.S. 254 (1970). As recited above, it was abundantly clear to the plaintiff at each stage of the proceeding what the nature of the allegations were, and she had a full opportunity to rebut them.
The DTA requires that its notices contain “(1) A statement of the intended Department action; (2) The reason(s) for the intended action; (3) A citation to the regulations(s) supporting such action; (4) An explanation of the recipient’s right to request a fair hearing; and (5) the circumstances under which assistance is continued if a hearing is requested.” 106 CMR 342.200(A). The notices provided here complied with the regulation.[1]
Standard of Proof
The plaintiff submits that her state and federal constitutional rights were also violated because the regulation upon which the DTA proceeded to terminate her participation in the EA program provided that termination will occur when the “EA assistance unit [tenant] is asked to leave a temporary emergency shelter because there is reasonable cause to believe that a member(s) of the EA assistance unit is engaging in or engaged in criminal activity that threatens the health, safety and/or security of self, other residents, guests and/or the staff of the temporary emergency shelter.” The plaintiff submits that the “substantial evidence” or preponderance of the evidence standard is constitutionally required for removal from the program. Plaintiff again cited Goldberg v. Kelly, 397 U.S. 254, (1970), among other authorities.
Whatever abstract appeal such an argument might have, it, quite literally, misses the mark here. That is because the DTA’s own regulations require that the preponderance of the evidence standard be employed at the stage of the administrative review of a shelter’s termination of residential benefits. 106 CMR 343.610. And in making his decision terminating the plaintiffs benefits, the hearing officer recorded that “I so find by a preponderance of the evidence.”
Further, as the Attorney General noted in her papers, it is the shelter (here, CSR), not the DTA, that utilizes the “reasonable cause to believe” standard. At the hearing, the issue of whether the plaintiffs son (or sons) had broken into and stolen the bicycle and basketball was squarely addressed, and the hearing officer found the plaintiffs account not credible.
The hearing officer rendered his ultimate factual decision in these terms: “The [plaintiff], or a member of the household, as demonstrated by a preponderance of the evidence, engaged in criminal activity while a resident in temporary emergency shelter, therefore her EA benefits shall be terminated.” That in the “Conclusions of Law” section of the written decision the hearing officer recited the regulation’s “reasonable cause to believe" language with regard to CSR’s termination of the plaintiffs shelter benefits is of no consequence. That is because the operative determination was the hearing officer’s affirmative finding as to the plaintiffs or her household’s actual criminal activity by a preponderance of the evidence.[2]
Eligibility Change
Finally, the plaintiff submits that the introduction of the “reasonable basis to believe” test for criminal conduct had the effect of causing an adverse eligibility-change without complying with EA Budget Item 4403-2120 (the “Budget Item”). The Budget Item prohibited DTA from adversely changing eligibility criteria in the EA program without 30 days prior notice, in the form of a report, to both houses of the legislature. The SJC has approved such legislatively imposed conditions on the executive branch’s functions. See Wilson v. Commissioner of Transitional Assistance, 441 Mass. 846, 857-58 (2004).
Leaving aside the question whether a change in the formulation of the standard of proof of criminal conduct for termination of shelter could reasonably be construed to be a change of “eligibility criteria,” the Court has concluded that no change of substance occurred. Accordingly, it is unnecessary to further address the argument.
ORDER
The plaintiffs motion for summary judgment is DENIED. The plaintiffs prayers for injunctive relief are DENIED. The defendant’s cross motion for summary judgment is ALLOWED. The plaintiffs complaint for declaratory judgment is DISMISSED.

On October 19, 2006 the DTA published a revised standard form of notice for the termination of temporary shelter. The revision added the requirement that the resident(s) whose conduct was the subject of the violation be specifically identified and that the incident underlying the violation be described in summary form. Plaintiff in her reply brief characterized the revised notice as “a vast improvement over its earlier notice” but that “it is still not good enough.” Because the Court finds that the original form of notice complied with statutory and constitutional requirements and that, in any event, the plaintiff received actual notice of the detailed basis of the alleged violation, the revised notice is not material to the Court’s decision.

Following oral argument, in a communication to the Court, dated July 6, 2007, the Attorney General informed the Court that the regulation at issue here, 106 CMR 309.040(F)(1)(A) had been amended, effective June 1, 2007, as follows: “For the purpose of this regulation the temporary emergency shelter benefits may be terminated on the basis of criminal activity only if the Department concludes by a preponderance of the evidence (more likely than not) that a member of the EA assistance unit is engaging in or engaged in criminal activity described!.]” The Court views the amendment as a clarification of an already existing policy and practice. The effect was to conform, in unambiguous terms, the regulation to that existing policy and practice.