MacDonald, D. Lloyd, J.
Before the Court is an appeal under G.L.c. Ill, §142B and G.L.c. 30A, §14 from a November 19, 2007 decision of the Town of Marblehead (the “Town” or “Marblehead”) Board of Health (the “Board”) upholding a cease and desist order (the “Order”) that prohibited the plaintiffs from operating their residential central air conditioning system. The Board based its decision on the grounds that the operation of the system violated 310 C.M.R. 7.10, the state noise control regulation issued by the Massachusetts Department of Environmental Protection (the “Mass DEP”). The Court ALLOWS the plaintiffs’ motion, DENIES the defendants’ cross motion and thus ANNULS the Order.
Factual and Procedural Background
The plaintiffs live in a compact residential neighborhood in Marblehead. One of their immediate neighbors, David Reid (“Reid”) filed a complaint with the Town’s Board of Health alleging that an air conditioning system (the “System”) installed by the plaintiffs in connection with a 2006 remodeling project violated the Commonwealth’s noise pollution laws.
A building permit had been lawfully obtained for the project, and a certificate of occupancy had been duly issued in December 2006. No special permit was required for the installation of the System because the Marblehead zoning by-law requires such a permit only if the noise generated exceeds 60 decibels.[1] It is undisputed that the sound emitted by the System does not exceed that threshold.
On September 26,2007, the Board issued the above referenced Order prohibiting the plaintiffs from further operating the System. As noted, the Order was based on asserted violations of Mass DEP noise pollution regulations. The plaintiffs filed a request that the Board reconsider its action pursuant to G.L.c. 30A, *289 § 10, and the Board held a public hearing on November 19, 2007. At its conclusion, the Board voted to sustain the Order. The plaintiffs appealed.[2]
In pertinent part, the Order recited that the reasons for its action were that:
Mass DEP regulation 310 CMR 7.52 “states that a noise source will be considered to be violating if the source . . . (¡Increases the broadband sound level by more than 10db(A) [decibels] above ambient,” and
On September 20, 2007 the System’s sound level was recorded as greater than 22 decibels above ambient with one of the System’s air conditioning unit’s operating and greater than 27 decibels with both air conditioning units operating.
Scope of Review
Pursuant to G.L.c. 30A, § 14, the Court may modify or set aside an agency’s determination if there was a violation of constitutional provisions or if the decision was in excess of statutory authorify, based on an error of law, made upon an unlawful procedure or unsupported by substantial evidence or otherwise unwarranted on the record. The court may also allow the appeal if the agency’s action was “arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.”
On factual matters, the reviewing court is required to give “due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authorify conferred upon it.” Id., §14(7). See Thomas v. Civil Service Commission, 48 Mass.App. 446, 451 (2000); Tri-County Youth Programs, Inc. v. Acting Deputy Dir. of the Div. of Employment and Training, 54 Mass.App.Ct. 405, 408 (2002). The agency’s decision, however, must be supported by substantial evidence. G.L.c. 30A, §14(7). “Substantial evidence” means such evidence as a reasonable mind might accept as adequate to support a conclusion. Id., §1(6). When applying the substantial evidence standard, the Court considers the record as a whole. The Black Rose, Inc. v. City of Boston, 433 Mass. 501, 503 (2001). As long as the findings are properly supported, “(the decision] will not be disturbed by a reviewing court.” Tri-County Youth Programs, Inc., 54 Mass.App.Ct. at 408.
DISCUSSION
The Board’s Authority to Enforce the Commonwealth’s Air Pollution Standards
Noise is regulated by Mass DEP regulation 310 CMR 7.10:
(1) No person owning, leasing, or controlling a source of sound shall willfully, negligently, or through failure to provide necessary equipment, service, or maintenance or to take necessary precautions cause, suffer, allow, or permit unnecessary emissions from said source of sound that may cause noise.
(4) 310 CMR 7.10(1) is subject to the enforcement provisions specified in 310 CMR 7.52.
In turn, 310 CMR 7.52 provides that any “board of health official! ]” is authorized by the Mass DEP to enforce regulations in which 310 CMR 7.52 is cited.
General Laws c. Ill, §26 sets forth that cities shall establish boards of health. Among the functions of a board of health is that “[t]he board . . . shall examine into all nuisances . . . within its town . . . which may, in its opinion, be injurious to the public health, shall destroy remove or prevent the same as the case may require, and shall make regulations for the public health and safety relative thereto . . .” G.L.c. Ill, §122. As noted, Mass DEP regulation 310 CMR 7.52 specifically empowers boards of health such as Marblehead’s to enforce its provisions.[3]
Accordingly, the Board was acting pursuant to lawful authorify in responding to the complaint about alleged noise from the plaintiffs’ System.
Content of the Administrative Record
The Administrative Record here consists of: (1) minutes of the November 19, 2007 meeting of the Board at which the Board voted to sustain its earlier cease-and-desist order; (2) the Director of the Board, Wayne Attridge’s (“Director Attridge’s”) “Chain of Events and Field Notes” regarding his investigation of the air conditioners (as presented to the Board at the November 19th hearing); and (3) the September 26, 2007 Order.
The Determination of Actionable Noise
As quoted above, 310 CMR 7.10 provides, “No person... controlling a source of sound shall willfully, negligently . . . cause, suffer, allow, or permit unnecessary emissions from said source of sound that may cause noise.”
“Noise” is defined at 310 CMR 7.00 as “sound of sufficient intensify and/or duration as to cause a condition of air pollution.”
“Air pollution” is defined there as “the presence in the ambient air space of one or more air contaminants or combinations thereof in such concentrations and of such duration as to: (a) cause a nuisance; (b) be injurious, or be on the basis of current information, potentially injurious to human health or animal life, to vegetation, or to properfy; or (c) unreasonably interfere with the comfortable enjoyment of life and prop-erfy or the conduct of business.”
There are no other provisions in the CMR that further define noise. However, the Mass DEP has issued two publications that were relied upon by the Board, at least in part, for the determination at issue here. One is styled, “Noise Pollution Policy Interpreta *290 tion” (“Policy Interpretation”), and the other is styled, “Fact Sheet” (“Fact Sheet”).[4]
The Policy Interpretation states that the Mass DEP evaluates the effects of noise when “the agency responds to complaints from the public about noise generated by an existing source.” Upon receiving such a complaint, the Mass DEP “focuses on protecting affected people at their residences and in other buildings that are occupied by sensitive receptors from nuisances and the public health effects of the noise.”
The Policy Interpretation then states that the criteria described in the Policy are applied to the noise impact “at both the property line and the nearest occupied residence or other sensitive receptor.” It further provides that a noise levels exceeding the criteria “at the source’s property line by themselves do not necessarily result in a violation or a condition of air pollution under Mass DEP regulations [referencing 310 CMR 7.10 U].”
The Policy Interpretation goes into further detail:
In responding to complaints, Mass DEP measures .noise levels at the complainant’s location and at other nearby locations that may be affected (e.g., residences and/or buildings with other sensitive receptors). If the noise level at a sensitive receptor’s location is more than 10 dB, Mass DEP requires the noise source to mitigate its impact.
The Fact Sheet provides further detail. First, it distinguishes between three types of “noise,” one of which would encompass the System at issue here (“Sounds in narrow frequency ranges such as ‘squealing’ fans or other rotary equipment”). The Fact Sheet then cites the Mass DEP “Policy” to the following effect:
A noise source will be considered to be violating the Department’s noise regulation (310 CMR 7.10) if the source:
1. Increases the broadband sound level by more than 10 dB(A) above ambient, or
2. Produces a “pure tone” condition — when any octave band center frequency sound pressure level exceeds the two adjacent center frequency sound pressure levels by 3 decibels or more.
These criteria are measured both at the property line and at the nearest inhabited residence. “Ambient” is defined as the background A-weighted sound level that is exceeded 90% of the time, measured during equipment operating hours. “Ambient” may also be established by other means with consent of the Department.[5]
Errors of Law
The Administrative Record discloses the following errors of law.
1. As quoted above, the Board’s Order appears to assume that any sound measured at greater than 10 decibels above ambient, ipso facto, comprises actionable noise under the 310 CMR 7.10. However, there is no reference to a 10 decibel standard in the CMR. Furthermore, the Policy Interpretation states that, at least as to measurements from the property line, noise levels exceeding the criteria “by themselves do not necessarily result in a violation.” Accordingly, it was error for the Board to rest its determination exclusively on such a reading in excess of 10 decibels.[6]
2. The Policy Interpretation further provides, “If the noise level at a sensitive receptor’s location is more than 10 dB, Mass DEP requires the noise source to mitigate its impact.” The Order and the Administrative Record contain no findings as to the Board’s consideration of measures by which the plaintiffs could have mitigated the alleged violation and as to the plaintiffs’ failure to have done so.[7]
3. Mass DEP policy as stated in the Fact Sheet provides, “ ‘[The] Ambient’ [measurement] is defined as the background A-weighted sound level that is exceeded 90% of the time, measured during equipment operating hours. ‘Ambient’ may also be established by other means with consent of the Department.” Neither the Board’s Order nor the field notes of its Director, which are part of the Administrative Record, document that the ambient measurement upon which the Board relied for its conclusion that the plaintiffs’ System generated sound in excess of 10 decibels was exceeded 90% of the time during the System’s normal operating hours. Also, there is no documentation that the Board obtained the consent of the Mass DEP to employ a different measurement standard.
4. The field notes of the Director of the Board further disclose that the ambient levels relied upon by the Board for its determination of a violation were taken on a different day, at a different time of day and under different weather conditions than the decibel measurements of the sound allegedly generated by the plaintiffs’ air conditioning System. A decision based on such asymmetric data is arbitrary and capricious and an abuse of discretion as a matter of law.
5. The Board’s determination of a violation rests on the provision of 310 CMR 7.10(1) that “No person . . . shall willfully, negligently, or through failure to . . . take necessary precautions cause, suffer, allow, or permit unnecessary emissions . . . that may cause noise.” The minutes of the November 19th hearing contain the Board Chair’s conclusion that the plaintiffs “did not willfully create the problem.” He then added, “[B]ut it’s there.” In the absence of other findings, such a conclusion does not comprise a requisite “finding,” G.L.c. 30A, §11(8), sufficient to support the determination that the plaintiffs “negligently, or through failure to take necessary precautions” permitted the alleged noise. Accordingly, an error of law was committed.
For the above reasons, the Board’s Order must be annulled.
*291 ORDER
The Marblehead Board of Health Order of September 26, 2007, as sustained by its denial of the plaintiffs’ appeal on November 19, 2007, is ANNULLED. The plaintiffs’ motion for judgment on the pleadings is ALLOWED. The defendants’ cross motion for judgment on the pleadings is DENIED. Judgment shall enter for the plaintiffs.

The Court allowed the plaintiffs’ motion brought pursuant to G.L.c. 30A, §14(5) and Superior Court Standing Order l-96(3)(b) to enlarge the administrative record to include the Town’s zoning by-law and the December 12, 2006 certificate of occupancy issued by the Town’s Building Department.

In an order dated June 6, 2008, this Court stayed enforcement of the Order pending the outcome of the instant appeal.

 310 CMR 7.52 states:
Any police department, fire department, board of health officials, or building inspector or his designee acting within his jurisdictional area is hereby authorized by the Department [of Environmental Protection] to enforce, as provided for in M.G.L.c. Ill, §142B, any regulation in which specific reference to 310 CMR 7.52 is cited.

Neither the Policy Interpretation nor the Fact Sheet were specifically referenced in the Administrative Record. Copies of both were attached as exhibits to the Board’s memorandum of law in opposition to the plaintiffs motion for judgment on the pleadings. With no issue having been raised as to their authenticity as DEP publications, the Court considers them within such parameters.

As to the origin of the “Policy,” the Fact Sheet states, “This Policy was originally adopted by the MA Department of Public Health in the early 1970s. It was reaffirmed by the DEP’s Division of Air Quality Control on February 1, 1990, and has remained in effect.”

In interpreting the application of agency pronouncements that provide policy guidance, the Court must give substantial deference to the agency’s own interpretation of those documents. Town of Brookline v. Comm'r of Dep’t of Environmental Quality Engineering, 398 Mass. 404, 411 (1986) (“In reviewing a decision of an agency construing its own regulations, ‘considerable deference is due,’ ” quoting Northbridge v. Natick, 394 Mass. 70, 74 (1985)). Principles of federal administrative law are similar. See Chevron USA, Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 865 (1984). However, in the ordinary course, a Court cannot countenance an agency’s failure to follow its own published policies because the agency’s action would have been arbitrary and capricious. G.L.c. 30A, §14. Furthermore, where an agency’s policy statement is purported to be binding on the public, the agency has overreached. That is because a regulatory standard can be substantively binding only if the formal process for promulgating regulations has been followed. Richard J. Pierce, Jr., Administrative Law Treatise, §6.3 (4th ed. 2002). See generally Christiansen v. Harris County, 529 U.S. 576, 587 (2000) (agency policy statements to be followed only if “persuasive”). The 10 decibel standard, which appears to have been inflexibly applied here, was not the product of the Mass DEP’s regulatory rule-making process. While the body of administrative law in the Commonwealth does not include the distinctions commonly drawn in federal law between “legislative,” “interpretive” and “procedural” rules or regulations, A. Celia, Administrative Law and Procedure, §747, at 137, n.l (2008), the rationale underlying the scope and standards of judicial review is similar.

General Laws c. 30A, §11(8) states, “Every agency decision shall be in writing or stated in the record. The decision shall be accompanied by a statement of reasons for the decision, including determination of each issue of fact or law necessary to the decision . . .”