## New Bedford Housing Authority vs. Elba Olan.[1]

Bristol. May 8, 2001. - November 16, 2001.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Sosman, & Cordy, JJ.

*Housing Authority. Landlord and Tenant,* Eviction, Termination of tenancy. *Constitutional Law,* Jury, Search and seizure. *Summary Process,* Notice to quit. *Statute,* Construction. *Jury and Jurors. Search and Seizure,* Warrant, Exigent circumstances. *Due Process of Law,* Notice. *Practice, Civil,* Discovery.

This court construed G. L. c. 139, § 19, as creating a private remedy for a lessor or owner of realty to terminate the tenancy of a tenant who commits certain acts, and to recover possession of the leased premises expeditiously, and concluded that a public housing tenant was entitled to a jury trial under art. 15 of the Massachusetts Declaration of Rights in an action under § 19 by a housing authority seeking to evict the tenant. [368-372] Sosman, concurring, with whom Greaney and Cordy, JJ., joined.

This court held that, unless a public housing tenant receives the written notice required by G. L. c. 121B, § 32, an action for summary process or seeking an injunction under G. L. c. 139, § 19, may not be commenced. [372-373]

In an action under G. L. c. 139, § 19, to evict a public housing tenant on the ground that the tenant and her family had used force or violence against police officers who were on the premises, the burden was on the housing authority to justify the officers' presence without a search warrant, and the question was one of fact to be decided by the jury. [373-374]

In an action under G. L. c. 139, § 19, to evict a public housing tenant, there was no abuse of discretion in the judge's ordering expedited discovery and setting the case down for a speedy trial. [374]

Civil action commenced in the Southeast Division of the Housing Court Department on July 14, 1997.

The case was heard by *Manuel Kyriakakis,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Martin J. Rooney* for the plaintiff.

*Christopher R. Whittingham* for the defendant.

[1]Amicus briefs were submitted by the Massachusetts Union of Public Housing Tenants, the Massachusetts Chapter of the National Association of Housing and Redevelopment Officials, Inc., and the Boston Housing Authority.

The following submitted briefs for amici curiae:

*Wilbur E. Commodore* for Boston Housing Authority.

*Richard M. Whitehill* for Massachusetts Chapter of the National Association of Housing & Redevelopment Officials, Inc., & another.

*Richard M.W. Bauer & Judith Liben* for Massachusetts Union of Public Housing Tenants.

SPINA, J. Elba Olan had been a tenant for about three years at the Presidential Heights public housing project, a federally subsidized public housing project in New Bedford owned and operated by the New Bedford Housing Authority. On July 14, 1997, the housing authority commenced an action under G. L. c. 139, § 19, seeking cancellation of Olan's lease, a declaration that her lease was void, orders that Olan and her family vacate and surrender forthwith their apartment, and a speedy trial. Its complaint alleged that Olan and her family had used force or violence against New Bedford police officers who were lawfully at her apartment on July 10.[2] Olan answered, denying the allegations and raising as defenses that the police were not lawfully at her apartment, and that the housing authority had an adequate remedy at law. She also demanded a trial by jury. A judge in the Housing Court declined to grant her a jury trial, and, after a bench trial, on August 21, 1997, granted the relief sought by the housing authority.

Olan appealed from the judgment to the Appeals Court, claiming that (1) she was denied her right to a jury trial under art. 12 and art. 15 of the Massachusetts Declaration of Rights; (2) the housing authority failed to show that the police officers were lawfully on the property; (3) the judge erred in ordering her eviction without evidence that she had received the prior written notice required under Federal and State law; and (4) the judge abused his discretion by not affording her the opportunity to conduct pretrial discovery. The Appeals Court construed G. L. c. 139, § 19,[3] as authorizing a lessor or owner of real estate to bring an action to abate a public, or common, nuisance

---

[2]The housing authority did not allege a breach of the terms of Olan's lease, and a copy of her lease is not included in the record appendix.

[3]General Laws c. 139, § 19, as amended through St. 1995, c. 179, § 13, states in relevant part: "If a tenant or occupant of a building or tenement,

and, without reaching the question of the applicability of art. 15, held that, because the relief sought was predominantly punitive, art. 12 required a jury trial in such an action. It ordered the judgment vacated and remanded the case for a new trial. See *New Bedford Hous. Auth.* v. *Olan,* 50 Mass. App. Ct. 188 (2000). We granted the housing authority's application for further appellate review. We agree that Olan was entitled to a jury trial, but because we construe G. L. c. 139, § 19, as creating a private remedy in the nature of an eviction, our holding is based on art. 15.[4]

1. *Background.* On July 10, 1997, at approximately 11 P.M., New Bedford police Officers Jeanine Pettiford and Richard Nat-

---

under a lawful title, uses such premises or any part thereof for the purposes of prostitution, assignation, lewdness, illegal gaming, or the illegal keeping or sale of alcoholic beverages . . . or the illegal keeping, sale or manufacture or sale of controlled substances . . . or the illegal keeping of a weapon . . . or possession or use of an explosive or incendiary device . . . or, if a tenant or household member of a housing authority or federal or state assisted housing commits an act or acts which would constitute a crime involving the use or threatened use of force or violence against the person of an employee of the housing authority or of state or federally assisted housing or against any person while such person is legally present on the premises of a housing authority or on the premises of federal or state assisted housing, such use or conduct shall, at the election of the lessor or owner, annul and make void the lease or other title under which such tenant or occupant holds possession and, without any act of the lessor or owner shall cause the right of possession to revert and vest in him, and the lessor or owner may seek an order requiring the tenant to vacate the premises or may avail himself of the remedy provided in chapter two hundred and thirty-nine. If the lessor or owner is entitled to relief pursuant to this section, such lessor or owner may seek declaratory judgment of his rights hereunder in the district, superior or housing court, which may grant appropriate equitable relief, including both preliminary and permanent injunctions, including a preliminary injunction granting the lessor or owner possession of the premises, and in connection therewith may order issuance of an execution for possession of any such premises to be levied upon forthwith."

[4]Article 15 of the Massachusetts Declaration of Rights states, in relevant part: "In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury; and this method of procedure shall be held sacred."

The right to trial by jury in civil cases guaranteed by the Seventh Amendment to the United States Constitution has not been made applicable to the States through the Fourteenth Amendment to the United States Constitution. See *Walker* v. *Sauvinet,* 92 U.S. 90, 92 (1875); *Dalis* v. *Buyer Advertising, Inc.,* 418 Mass. 220, 223 n.4 (1994).

inho responded to a reported disturbance at 39 Hicks Street in New Bedford. When they arrived they saw a white pickup truck leaving the scene quickly, without the headlights on. The officers pursued the truck in their cruiser. The truck did not stop but proceeded erratically and in excess of the speed limit. The vehicle chase ended near the housing project after the truck swerved and the cruiser collided with it. Two men jumped out of the truck and ran between the buildings of the housing project. The officers chased them on foot, but Natinho fell and Pettiford stopped to attend to him.

New Bedford police Officer Elvin Ramos, who was a tenant at the housing project, saw the collision from his front porch. He was preparing to go on duty and was in uniform. Ramos chased the driver of the truck, never letting him out of his sight until the driver entered Olan's apartment through the open door at the rear entrance. Ramos followed him into the apartment through the open doorway. He went to the second floor where there were three bedrooms, one of which was locked.

Olan came from her second floor bedroom to see what was happening. She was joined by her two daughters, who came from outdoors. They converged on Ramos. Olan repeatedly screamed at him in Spanish, asking, "What's happening?" Detective Jose[5] was the next to arrive, followed by Pettiford and Officer John Silva. Jose ordered the people in the locked bedroom to open the door and come out. Olan asked her son Hector, whose bedroom it was, to open the door. Hector emerged from the bedroom, and Detective Jose and Ramos went in. Hiding in a closet was Francisco Miranda, whom Ramos identified as the man he followed into Olan's apartment. Miranda was arrested and charged with operating to endanger. Hector also was arrested on charges that do not appear in the record.

Olan became increasingly hysterical as this was happening, and her daughters became increasingly hostile toward the officers. Pettiford tried to calm Olan, but Olan struck her. Silva also tried to calm Olan, but she struck him as well. They placed Olan under arrest. As Pettiford was escorting Olan downstairs, she was pushed from behind by Olan's younger daughter, send-

---

[5]The record does not disclose his first name.

ing both Pettiford and Olan tumbling down the stairs to the first floor landing, where Pettiford came to rest on top of Olan. Silva then arrested Olan's younger daughter.

Momentum continued to build. Olan's older son arrived with some friends. They accosted the officers with hostile language and threats. Some threw stones at the officers. Pettiford repelled them with mace. Meanwhile, a crowd estimated at seventy-five to one hundred people gathered outside the apartment and joined the confrontation, yelling and shouting, and throwing stones at the officers. State police were called to assist the city police. In all, fifteen to sixteen officers responded to what the judge found was a near riot situation.

2. *Jury trial.* The parties have analyzed G. L. c. 139, § 19, as authorizing a lessor or owner of real estate to bring an action to abate a public, or common, nuisance and the Appeals Court based its decision on the construction of the statute given by the parties. We do not agree that § 19 creates such a remedy. We construe the statute as creating a private remedy in the nature of an eviction.

The Legislature may provide for the elimination of common nuisances by both criminal and equitable proceedings. See *Commonwealth* v. *United Food Corp.*, 374 Mass. 765, 779 (1978). The former punishes the offender for the crime of maintaining a nuisance, while the latter, by way of an action to abate a common nuisance, looks only to the property that, in the use made of it, constitutes the nuisance. See *Carleton* v. *Rugg*, 149 Mass. 550, 554 (1889). General Laws c. 139 provides for both types of proceedings. Section 5 establishes criminal penalties for maintaining a house of prostitution. See G. L. c. 272, § 24. Section 15 makes it a crime to maintain a place for illegal gaming or a place for the illegal keeping or sale of alcoholic beverages. Actions to abate specific common nuisances are authorized by G. L. c. 139, §§ 4-13 (premises used for prostitution), and §§ 14-16A (premises used for illegal gaming; illegal keeping or selling of alcoholic beverages; or illegal keeping, selling, or manufacturing of controlled substances). A proceeding under § 19 is neither a criminal action nor an equitable action to abate a common nuisance. It creates a private remedy for a lessor or owner of realty to terminate the tenancy of a ten-

ant who commits certain acts, and to recover possession of the leased premises expeditiously. A tenancy may be terminated for the reasons provided in § 19 even in the absence of any provision in the lease to terminate for such reasons. See *Roseman* v. *Day*, 345 Mass. 93, 94 (1962).

Section 19 and its predecessors have never authorized a lessor or owner to bring suit to abate a common nuisance.[6] Prior to 1995, G. L. c. 139, § 19, provided that, if a tenant committed a particular common nuisance on the premises occupied by him, the lessor or owner could elect to annul and make void the tenant's lease or other title, and make immediate entry without legal process to recover possession. See *Roseman* v. *Day, supra* at 95. As most recently amended through St. 1995, c. 179, § 13, § 19 no longer permits self-help evictions, but instead confers equitable jurisdiction on the District, Superior, and Housing Courts to effectuate the legislative purpose of permitting a lessor or owner to expeditiously recover possession of premises occupied by a tenant who commits one of the specified common nuisances or other criminal acts. The 1995 amendment also expanded the list of acts for which relief is available, including "an act or acts [of a public housing tenant] which would constitute a crime involving the use or threatened use of force or violence against the person of an employee of the housing authority . . . or against any person . . . legally . . . on the premises."[7] Section 19 authorizes equitable relief in furtherance of the purpose of the statute, including a preliminary or permanent injunction granting the lessor or owner immediate possession of the leased premises and ordering an offending tenant to vacate the premises forthwith.[8] Section 19 does not confer equitable jurisdiction to abate a common nuisance

---

[6]The Appeals Court opinion describes the evolution of § 19 over its long history. See *New Bedford Hous. Auth.* v. *Olan*, 50 Mass. App. Ct. 188, 195-196 nn.13 & 14 (2000).

[7]Unlike the common nuisances and other criminal acts specified in § 19 which, to be actionable thereunder, must be committed on the leased premises or common areas which the tenant is entitled to use, "an act . . . which would constitute a crime involving the use or threatened use of force or violence" is actionable under § 19 if it occurs anywhere on housing authority property.

[8]The housing authority filed a motion for preliminary injunction, which was denied. Although preliminary injunctive relief may be appropriate in this type

because its purpose is to remove offending tenants, not remedy their conduct. However, equitable relief may be granted pending trial to restrain a tenant's continuing unlawful conduct.

Although G. L. c. 139, § 19, makes no provision for a trial by jury, neither does it foreclose trial by jury. Article 15 has been construed as preserving the right to trial by jury in actions for which a right to trial by jury was recognized at the time the Constitution of the Commonwealth was adopted in 1780. See *Frizado* v. *Frizado*, 420 Mass. 592, 595 (1995); *Department of Revenue* v. *Jarvenpaa*, 404 Mass. 177, 186 (1989). At that time, the common law afforded a tenant the right to trial by jury on a landlord's writ of entry, the procedure to evict a tenant after the expiration or termination of a tenancy. Thus, the right to trial by jury in eviction cases has been preserved under art. 15. See *Davis* v. *Alden*, 2 Gray 309, 312 (1854); *Kargman* v. *Dustin*, 5 Mass. App. Ct. 101, 108 (1977). The Supreme Court reached a similar conclusion under the Seventh Amendment to the Constitution of the United States with respect to eviction proceedings in the District of Columbia. See *Pernell* v. *Southall Realty*, 416 U.S. 363, 373-375 (1974). The Legislature may impose reasonable conditions on a tenant's right to trial by jury before eviction, such as requiring payment of all rents due the landlord. See G. L. c. 239, § 5. But a tenant who meets such conditions is entitled to a trial by jury before being evicted. See *Davis* v. *Alden, supra*; *Kargman* v. *Dustin, supra*.

The controversy at hand is one that, in the words of art. 15, "concern[s] property,"[9] and is a "suit[] between two . . . persons," a landlord and a tenant, for which the tenant has

---

of case, neither the transcript of the hearing nor the judge's findings on the motion have been included in the appellate record. The housing authority never sought an interlocutory review of the denial of its motion. The question of the denial of the motion for a preliminary injunction is therefore not properly before us. See *Ashford* v. *Massachusetts Bay Transp. Auth.*, 421 Mass. 563, 567 (1995). Also, the parties have not addressed the apparent conflict in the provision of § 19 stating that an execution for possession may issue with a preliminary injunction. An execution issues after a final judgment, whereas a preliminary injunction is an interlocutory order. We do not consider the question.

[9]The Appeals Court correctly concluded that a public housing tenancy is an interest in property. See *New Bedford Hous. Auth.* v. *Olan, supra* at 197-198, citing *Greene* v. *Lindsey*, 456 U.S. 444, 450-451 (1982) (right to continued residence in public housing is a significant property interest).

historically and constitutionally enjoyed the right to trial by jury. Section 19 provides that a lessor or owner may obtain relief against a tenant who commits any of the acts proscribed therein either through an action for declaratory or equitable relief, or through an action under G. L. c. 239, summary process. It expresses a clear legislative intent to make available two similar remedies for the same wrong. An action pursuant to § 19 produces the same result as an action for summary process; it is an action in the nature of an eviction, and it involves allegations that typically would give rise to an eviction. Although an action under § 19 is equitable, to which the right to trial by jury generally does not extend, see *Parker* v. *Simpson*, 180 Mass. 334, 344-355 (1902), recasting as equitable a remedy for which a right to jury trial existed at common law does not eradicate that right. See *Dalis* v. *Buyer Advertising, Inc.*, 418 Mass. 220, 223 (1994); *Stockbridge* v. *Mixer*, 215 Mass. 415, 418 (1913). Olan is entitled to a trial by jury.

The recent amendment to G. L. c. 139, § 19, was enacted by the same legislation that produced parallel changes to G. L. c. 121B, § 32. See St. 1995, c. 179. One purpose of the legislation was to provide for the speedy removal of tenants who commit any of the criminal acts described in § 19, whether the remedy pursued is the equitable remedy under § 19, or summary process under chapter 239. General Laws c. 121B, § 32, seventh par., states that summary process actions brought against public housing tenants for any of the reasons set forth in G. L. c. 139, § 19, "shall be accorded an expedited hearing and trial." Section 19 states that equitable relief available thereunder may result in an order "granting the lessor or owner possession of the premises . . . forthwith." These sections should be construed harmoniously, consistent with the purpose of the legislation that produced them. The remedies should be available with comparable ease. See *Yeretsky* v. *Attleboro*, 424 Mass. 315, 319 (1997). Because actions under § 19 are in the nature of an eviction they may be treated as summary process actions. The Uniform Summary Process Rules govern summary process actions, and they accommodate the right to a jury trial as well

as the need for expedited trials.[10] They also incorporate Mass. R. Civ. P. 65 and 66, 365 Mass. 832 and 834 (1974), for cases in which equitable relief is sought.[11] The Uniform Summary Process Rules may be applied to civil actions under G. L. c. 139, § 19. A jury trial would not have caused any appreciable delay here. The commencement of Olan's trial would have been delayed only by the time needed to empanel a jury.

We address the other issues raised by Olan because they are likely to arise at retrial.

3. *Notice of termination.* Olan claims that the housing authority failed to give her prior written notice of termination as required by State and Federal law. She did not raise this issue in her answer, and she did not appeal from the denial of her post-trial motions for relief under Mass. R. Civ. P. 60 (b) (4), 365 Mass. 828 (1974), and her motion to dismiss, in which she did raise the issue. The issue is waived. Because there is some uncertainty over the question, because it involves a matter of public interest that is likely to arise in the future, and where the issue has been fully briefed, we will address the issue. See *Canter* v. *Commissioner of Pub. Welfare*, 423 Mass. 425, 432 (1996).

The Appeals Court did not decide the statutory question, but instead held that, because Olan had actual notice of termination of her tenancy, the requirements of due process had been satisfied. Although requirements of due process were satisfied, the requirements of G. L. c. 121B, § 32, seventh par., were not.

That section states, in part: "The tenancy of a tenant of a housing authority shall not be terminated without cause and without reason therefore given to said tenant *in writing prior to such housing authority filing an action for summary process or*

---

[10]Rule 2 (c) of the Uniform Summary Process Rules (West 2001) establishes a schedule for prompt trials; Rule 7 establishes a procedure for expedited discovery; and Rule 8 provides for trial by jury "insofar as jury trial is available in the court where the action is pending." Jury trials in summary process actions are currently available in the Housing Court (G. L. c. 185C, § 21), in the Superior Court (Uniform Sum. Proc. R. 2 (c) — original summary process entries are to be tried to a jury in the next nonjury session after entry), in the Central District Court of Worcester (G. L. c. 218, § 19A), and in designated jury session locations for all District Court divisions in Berkshire, Essex, Middlesex and Norfolk counties. St. 1996, c. 358, § 8, as amended by St. 2000, c. 142.

[11]See Rule 9 of the Uniform Summary Process Rules.

*seeking an injunction pursuant to [G. L. c. 139, § 19]"*
(emphasis added). Chapter 121B, § 32, seventh par., was
amended through St. 1995, c. 179, § 5, a portion of the same
legislation that created the current version of G. L. c. 139, § 19.
Although G. L. c. 139, § 19, is silent as to the question of
notice to either public or private housing tenants, G. L. c. 121B,
§ 32, makes written notice to public housing tenants a
prerequisite to filing suit under G. L. c. 139, § 19. We have
consistently held that, where a statute requires written notice to
terminate a tenancy, that notice must be sent before an action
for summary process may be commenced. See *Bech* v. *Cuevas*,
404 Mass. 249 (1989) (written termination notice required by
G. L. c. 186, § 12, must be served on tenant at will prior to
commencement of summary process action, even where tenant
is alleged to have committed voluntary waste); *Connors* v. *Wick*,
317 Mass. 628 (1945); *Oakes* v. *Munroe*, 8 Cush. 282 (1851).
Public housing tenancies are not treated differently. See *Spence*
v. *O'Brien*, 15 Mass. App. Ct. 489 (1983). Unless a public
housing tenant receives the notice required by G. L. c. 121B,
§ 32, an action under G. L. c. 139, § 19, may not be
commenced.[12]

4. *Lawful presence of police.* Olan argues that the judge erred
in concluding that the police officers were lawfully on the
premises when they were assaulted and beaten by her and
members of her family. The burden of proof is on the housing
authority to justify the officers' presence at Olan's apartment
without a search warrant. See *Tyree* v. *Keane*, 400 Mass. 1, 7-8
(1987). The housing authority relies on the exigent circum-
stances and the "hot pursuit" exceptions to the warrant
requirement. See W.R. LaFave, Search and Seizure § 6.1 (d)
(3d ed. 1996). The question whether the police were lawfully at
Olan's apartment is a question of fact to be decided by the jury.

---

[12]Olan has not shown that the notice requirements of G. L. c. 121B, § 32,
differ in any significant respect from the Federal notice requirements as would
trigger any preemption of the former by the latter. See *Thorpe* v. *Housing
Auth. of Durham*, 393 U.S. 268, 277-281 (1969) (local public housing author-
ity must comply with Federal law requiring notice to tenant of federally
subsidized housing program when terminating tenancy). See also 42 U.S.C.
§ 1437d(l)(3), (6); 24 C.F.R. § 966.4 (l)(3)(i) (1997).

See *Sharrar* v. *Felsing*, 128 F.3d 810, 820 (3d Cir. 1997); *Hancock* v. *Dodson*, 958 F.2d 1367, 1375 (6th Cir. 1992).

5. *Discovery.* Olan contends that the trial judge abused his 'discretion by denying her discovery needed to prepare an adequate defense. As previously stated, proceedings under G. L. c. 139, § 19, may be treated as actions for summary process. Tenants should be afforded the same discovery opportunities in an action under § 19 as they would receive in a summary process action. Rule 7 of the Uniform Summary Process Rules provides an opportunity for discovery that should be adequate for the vast majority of cases that are likely to arise under § 19. Olan filed a set of interrogatories. She made no other discovery requests. The judge ordered discovery to be completed before trial, and it was. Olan received the discovery she requested.

The judge's refusal to enforce Olan's subpoena of an assessment of the New Bedford police department, the so-called Bratton Report, was not error. The report was not relevant to any issue at trial.

Finally, Olan contends that the judge abused his discretion by denying her motion for a continuance because she was not able to prepare an adequate defense. Although the trial began two weeks after the complaint was filed, and resumed after a ten-day hiatus, Olan has not demonstrated any prejudice. The judge acted within his discretion in ordering expedited discovery and setting the case down for a speedy trial. His scheduling orders were entirely appropriate for this type of case.

The judgment is vacated and the case is remanded for a trial by jury.

*So ordered.*

Sosman, J. (concurring, with whom Greaney and Cordy, JJ., join). The provisions of G. L. c. 139, § 19, are intended to provide a prompt mechanism by which to remove from public housing those tenants who commit criminal acts of violence or threatened violence against other tenants, housing authority personnel, or others lawfully on public housing premises. For obvious safety reasons, and to reassure frightened tenants, visi-

tors, and housing authority employees, such cases must be handled as expeditiously as possible.

While I agree that tenants who face the annulment of their lease pursuant to G. L. c. 139, § 19, are entitled to a jury trial under art. 15 of the Massachusetts Declaration of Rights, nothing in art. 15 prevents the court from issuing a preliminary injunction in those cases where even the most expedited trial will not prevent the ongoing harm of violence or threatened violence on public housing premises. The statute expressly provides that a preliminary injunction may issue, and the Uniform Summary Process Rules (which the court uses as a reference point for the expeditious handling of such cases) also provide for preliminary injunctive relief. See Rule 9 of the Rules of the Uniform Summary Process Rules (applying standards of Mass. R. Civ. P. 65, 365 Mass. 832 [1974], for restraining orders and injunctions in summary process cases). While the full extent of the preliminary equitable relief allowable under G. L. c. 139, § 19, may be unclear and is not presently before us (*ante* at 369 n.8),[1] there is no question that courts hearing § 19 cases have the power to issue preliminary injunctions that meet the traditional requirements for preliminary equitable relief.

To obtain preliminary injunctive relief under those standard equitable principles, a housing authority must show that, without such relief, it "would suffer irreparable harm, not capable of remediation by a final judgment . . . . [I]t must also show that there is a likelihood that [it] would prevail on the merits of the case at trial." *John T. Callahan & Sons* v. *Malden*, 430 Mass. 124, 131 (1999). A judge considering an application for a preliminary injunction must also balance the likelihood of irreparable harm to the housing authority against any harm likely to fall on the tenant against whom such an injunction would issue. See *id.* See also *Packaging Indus. Group, Inc.* v. *Cheney*, 380 Mass. 609, 616-617 (1980). Thus, if a housing authority

---

[1]Specifically, as the court notes (*ante* at 369 n.8), the literal wording of the statute arguably allows the issuance of an execution for possession as a form of preliminary relief, even though an execution for possession would normally be the final relief accorded to a prevailing housing authority. Resolution of the legal ramifications that flow from that anomalous wording must await an appropriate case.

can demonstrate that it will likely prevail on its underlying claim to void the lease or tenancy on account of a defendant tenant's past violent criminal conduct, that the defendant's continued presence on the public housing premises pending trial on the merits poses a risk of irreparable harm (e.g., that the tenant is likely to injure or threaten housing authority personnel or other tenants, likely to destroy housing authority or other tenants' property, likely to interfere with other tenants' quiet enjoyment, or likely to interfere with housing authority operations), and that that risk of irreparable harm outweighs the harm that the tenant would suffer as a result of the injunction, the judge may issue a preliminary injunction against the offending tenant. The scope of the injunction may be tailored to satisfy the need demonstrated by the housing authority and to minimize the harm to the defendant tenant, and may include temporary remedies short of barring the tenant from the entire public housing premises (e.g., stay away and no contact orders, orders restricting the tenant to particular portions of the premises, or orders to cease certain activities).

Our decision today, upholding the tenant's right to trial by jury, leaves intact the remedy of preliminary injunction for those cases presenting an exigent need to remove the offending tenant from the public housing premises pending trial. Appropriate use of that preliminary equitable relief is consistent with the Legislature's determination that violence in public housing projects be remedied swiftly for the benefit of all who live and work there.