NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

16-P-426                                        Appeals Court

        CMJ MANAGEMENT COMPANY[1]  vs.  PATRICIA WILKERSON.


                        No. 16-P-426.

        Suffolk.     December 1, 2016. – March 31, 2017.

            Present:  Cypher, Maldonado, & Blake, JJ.


Housing.  Landlord and Tenant, Termination of lease.  Summary
    Process.  Practice, Civil, Summary process, Jury trial.



        Summary process.  Complaint filed in the Boston Division of
the Housing Court Department on September 15, 2014.

        The case was heard by MaryLou Muirhead, J.


        Stephanie Schuyler (Hoang Nguyen also present) for the
tenant.
        John G. Hofmann for the landlord.


        CYPHER, J.  Patricia Wilkerson appeals from a Housing Court

judgment, entered following a bench trial, that awarded the

plaintiff possession of an apartment in which Wilkerson resided

with her three grandchildren.  Wilkerson argues that the judge

_____

        [1] As agent for Harbor Point Apartments.

erred in concluding that the conduct of her juvenile grandson constituted criminal activity that materially breached her lease. In addition, Wilkerson argues that the judge erred by striking her request for a jury trial after she failed to comply with a Housing Court pretrial conference order requiring the submission of a pretrial conference memorandum.

Background. We summarize the facts from the judge's findings, reserving some facts for later discussion.[2] Wilkerson is a resident at the Harbor Point Apartments in the Dorchester section of Boston (Harbor Point). CMJ Management Company (CMJ) is Harbor Point's managing agent. Harbor Point is a housing development combining market-rate and subsidized units. Of the 1,283 units, 400 are subsidized pursuant to the Section 8 Housing Assistance Program of the United States Housing Act, 42 U.S.C. §§ 1437 et seq. (Section 8 program). Wilkerson had custody of her fourteen year old grandson, who, along with his two adult brothers, were authorized occupants of her apartment. In July of 2014, while playing with other children in one of the common areas of the apartment complex, the juvenile grandson fired a BB gun multiple times, injuring two juvenile residents. Later that day, a Harbor Point security guard went to

---

[2] "In reviewing a matter where[] the trial judge was the finder of fact, the findings of fact . . . are accepted unless they are clearly erroneous and we review the judge's legal conclusions de novo." Allen v. Allen, 86 Mass. App. Ct. 295, 298 (2014) (quotation omitted).

Wilkerson's apartment, spoke with Wilkerson and the juvenile about the incident, and confiscated the BB gun. The parents of the injured children apparently did not pursue criminal charges. The following week Wilkerson received a notice to quit, terminating her lease.

Pursuant to the Section 8 program, Wilkerson's tenancy is subsidized by the United States Department of Housing and Urban Development (HUD). As such, the lease she signed is a "model lease" provided by HUD.[3] Paragraph 13(c) of Wilkerson's lease provides that Wilkerson "agrees not to . . . engage in or permit unlawful activities in the unit, in the common areas or on the project grounds." Subparagraphs (c) and (d) of paragraph 23 of the lease provide in relevant part:

> "c. The Landlord may terminate [the lease] only for the following reasons:
>
> > "1. the Tenant's material noncompliance with the terms of this Agreement;
> >
> > ". . .
> >
> > "6. criminal activity by a tenant, any member of the tenant's household, a guest or another person under the tenant's control;

---

[3] The HUD model lease form is from December, 2007; it was signed by the parties on June 1, 2010.

> "(a) that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents . . . ;[4]

"...

"d. . . . The term material noncompliance with the lease includes:

> "(1) one or more substantial violations of the lease[.]"

Discussion. 1. Criminal activity. Wilkerson argues that Congress did not intend for "criminal activity" as stated in paragraph 23(c)(6) of her lease to apply to juvenile conduct but that even if it did, the judge erred in concluding that the juvenile's conduct was criminal in nature. We conclude that the clear and unambiguous language of the lease provision demonstrates Congress's intent that "criminal activity," as used in the Section 8 program statute and regulations (see note 4, supra), includes conduct by juveniles. Furthermore, although criminal charges do not appear to have been brought against the

---

[4] The language in paragraph 23(c)(6) of Wilkerson's model lease tracks 24 C.F.R. § 982.310(c)(2) (2007), which states in relevant part:

> "(i) Threat to other residents. The lease must provide that the owner may terminate tenancy for any of the following types of criminal activity by a covered person:
>
> "(A) Any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other residents."

See 42 U.S.C. § 1437f(d)(1)(B)(iii) (2012).

juvenile, the conduct of firing a BB gun in a public space and injuring two apartment complex residents was criminal activity (see our discussion, infra) and was therefore a material breach of Wilkerson's lease.

The Federal statute and HUD regulations on which the lease language is patterned (see note 4, supra) are clear and unambiguous. Paragraph 23(c)(6) of Wilkerson's lease states: "The Landlord may terminate [the lease] . . . [if there is] . . . criminal activity by a tenant, any member of the tenant's household, a guest or another person under the tenant's control." The declared policy of the United States for assisted housing is:

> "(1)(A) . . . to remedy the unsafe housing conditions and the acute shortage of decent and safe dwellings for low-income families;
>
> ". . .
>
> "(4) [to] promote the goal of providing decent and affordable housing for all citizens through the efforts and encouragement of Federal, State, and local governments, and by the independent and collective actions of private citizens, organizations, and the private sector."

42 U.S.C. § 1437(a) (2012). See Barnes v. Metropolitan Hous. Assistance Program, 425 Mass. 79, 80 (1997). The inclusion of the language "any member of the tenant's household" in the lease provision coupled with the overarching goals stated in the assisted housing policy demonstrates Congress's intent to

encompass juvenile conduct in the lease provision concerning criminal activity.

The judge found that the juvenile's conduct was in violation of G. L. c. 269, § 12B, a criminal statute.[5,6] Wilkerson contends that because violation of c. 269, § 12B, is punishable only by a fine, such a violation should not be considered criminal activity. The lease refers only to "criminal activity," which is not specifically defined. We note that numerous criminal acts are punishable only by a fine, rather than a sentence of incarceration.[7] Moreover, c. 269 is

---

[5] General Laws c. 269, § 12B, as amended through St. 1996, c. 151, § 493, provides in pertinent part:

> "No minor under the age of eighteen shall have [a] . . . so-called BB gun in his possession while in any place to which the public has a right of access unless he is accompanied by an adult . . . . [N]o minor under the age of eighteen shall discharge a BB shot, pellet or other object from [a] . . . BB gun unless he is accompanied by an adult . . . . Whoever violates this section shall be punished by a fine of not more than one hundred dollars, and the . . . BB gun . . . shall be confiscated. Upon a conviction of a violation of this section the . . . BB gun . . . shall, by the written authority of the court, be forwarded to the colonel of the state police, who may dispose of said article . . . ." (Emphasis supplied.)

[6] Although the judge did not specifically find that an assault and battery occurred, the facts on the record would support such a conclusion. The lack of formal charges against the juvenile is of no consequence when determining if criminal activity occurred in violation of Wilkerson's lease.

[7] See, e.g., G. L. c. 269, § 15 (sale of stink bombs), § 16, first or second offense (sale to minors of arrowheads used for hunting), § 18 (failure to report hazing); G. L. c. 270, § 1A

found under Part IV of the General Laws titled "Crimes, Punishments and Proceedings in Criminal Cases." And G. L. c. 269 specifically is titled "Crimes against Public Peace." See, e.g., First E. Bank, N.A. v. Jones, 413 Mass. 654, 661 n.9 (1992) (title of Act is "a useful indication of legislative intent"). There is also nothing in the lease that requires that the criminal activity at issue result in arrest, charge, or conviction.[8] Thus, the argument that the violation of G. L. c. 269, § 12B, is not criminal activity is contrary to the legislative intent to enact a criminal statute to regulate this precise activity.

Although not all crimes would necessarily constitute a material breach of the lease, the conduct of the juvenile here directly threatened the health and safety of Harbor Point residents, and was, therefore, such a breach.

Where, as here, the regulations governing the tenancy "permit the owner to take an action [to terminate the tenancy]

---

(eyeglass materials requirements), § 3A (negligent placement of rodent poison), § 6 (tobacco sale or gift to minors).

[8] See 24 C.F.R. § 982.310(c)(3) (2014):

"Evidence of criminal activity. The owner may terminate tenancy and evict by judicial action a family for criminal activity by a covered person in accordance with this section if the owner determines that the covered person has engaged in the criminal activity, regardless of whether the covered person has been arrested or convicted for such activity and without satisfying the standard of proof used for a criminal conviction."

but do not require action to be taken," the owner (here, the management company) is directed to reach a decision "in accordance with the owner's standards for eviction[, and] may consider all of the circumstances relevant to a particular eviction case."  24 C.F.R. § 982.310(h)(1) (2014). Compare Department of Hous. & Urban Dev. v. Rucker, 535 U.S. 125, 136 (2002) (public housing authority's discretion to evict for household member's drug-related activity); Boston Hous. Authy. v. Garcia, 449 Mass. 727, 735 (2007) (same; "HUD policy encourages local housing authorities to engage in the individualized consideration of the circumstances of each case to ensure 'humane results'").  CMJ's decision to evict on the basis that the juvenile's criminal activity of firing a BB gun and injuring other residents was a material breach of Wilkerson's lease was a proper exercise of the discretion afforded to it.  Compare Costa v. Fall River Hous. Authy., 453 Mass. 614, 616 (2009) (HUD regulations permit public housing authority to terminate recipient's participation in Section 8 program for criminal activity "that threatens the health, safety or right to peaceful enjoyment of other residents and persons residing in the immediate vicinity of the premises" [quotation omitted]).

By its plain terms, the relevant provision of Wilkerson's lease prohibits any criminal activity by a tenant or household

member.  The lease makes no distinction between adult and juvenile offenders.  The juvenile's conduct was criminal in nature and threatened the health and safety of residents of Harbor Point.  There was no error in the judge's conclusion that the juvenile's conduct constituted a material breach of the terms of the lease.

2.  <u>Jury demand</u>.  Wilkerson argues that she was improperly denied her right to a jury trial under art. 15 of the Massachusetts Declaration of Rights[9] and G. L. c. 185C, § 21,[10,11]

_____

[9] Article 15 provides, in pertinent part:

"In all controversies concerning property, and in all suits between two or more persons, except in cases in which it has heretofore been otherways used and practiced, the parties have a right to a trial by jury; and this method of procedure shall be held sacred, unless . . . the [L]egislature shall hereafter find it necessary to alter it."

[10] General Laws c. 185C, § 21, inserted by St. 1978, c. 478, § 92, provides, in pertinent part:

"All cases in the housing court department . . . shall be heard and determined by a justice . . . sitting without a jury, except . . . where a jury trial is required by the [C]onstitution of the [C]ommonwealth or of the United States and the defendant has not waived his rights to a trial by jury . . . ."

[11] The form on which Wilkerson checked the box requesting a jury trial referenced "Part I, Article XV of the Mass. Constitution; USPR 8; and Mass. Gen. Laws c. 218, §19B."  USPR 8 refers to Rule 8 of the Uniform Summary Process Rules.  "Rule 8 provides for trial by jury 'insofar as jury trial is available in the court where the action is pending.'  Jury trials in summary process actions are currently available in the Housing Court (G. L. c. 185C, § 21) [and] in the Superior Court (Uniform

when the judge struck her jury demand after she failed to comply with a pretrial conference order.  Wilkerson had requested a jury trial in her answer to the complaint.  Pursuant to Mass.R.Civ.P. 16, as amended, 466 Mass. 1401 (2013), the parties were ordered to discuss a potential settlement in advance of trial and to file a pretrial conference memorandum.  CMJ filed a pretrial conference memorandum, including proposed jury instructions.  Wilkerson, who was not represented by counsel, did not file a memorandum and the record does not indicate that she responded to CMJ's settlement letter.  The pretrial conference order identified potential sanctions that "may result" in the event a litigant failed to comply; one of the sanctions listed was striking the jury demand.

When Wilkerson was asked at the pretrial conference about the lack of a pretrial memorandum, she stated:  "Not

---

Sum. Proc. R. 2[c] -- original summary process entries ['shall be added to the next non-jury list for assignment for trial'])."  New Bedford Hous. Authy. v. Olan, 435 Mass. 364, 372 n.10 (2001).  General Laws c. 218, § 19B(b), as amended through St. 2011, c. 93, § 82, also provides for jury trials of summary process actions in the District Courts and the Boston Municipal Court.

Rule 8 incorporates Mass.R.Civ.P. 38, 365 Mass. 800 (1974). Pursuant to rule 38(b), "Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than [ten] days after the service of the last pleading directed to such issue."

understanding all the papers that were sent, I called here,[12] and even I came here and was told to show up here at this date, and that's all I was told.  And I came out to the lawyer's --" The judge then interrupted Wilkerson and said, "I can't let you go forward to a jury trial without a pretrial memorandum."

Generally, the right to a jury trial may be waived by failure to make a timely demand, Mass.R.Civ.P. 38(d), 365 Mass. 800 (1974), or by contract.  See Chase Commercial Corp. v. Owen, 32 Mass. App. Ct. 248, 251-252 (1992), citing Cadillac Auto. Co. of Boston v. Engeian, 339 Mass. 26, 30 (1959), and Spence v. Reeder, 382 Mass. 398, 411 (1981).  Here, Wilkerson did make a timely demand, in her answer to the complaint.  See Spence v. Reeder, supra ("In civil cases, waiver of a fundamental constitutional right is never presumed [Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937) (jury trial)], and always requires an intentional relinquishment of a known right or privilege"); rule 38(d), supra ("A demand for trial by jury made as herein provided may not be withdrawn without the consent of the parties").

At the same time, Housing Court judges retain broad discretion in determining how to proceed with summary process

---

[12] The notice of pretrial conference includes, among other things, the court contact person and telephone number and encourages parties to call the court contact person with any questions.

hearings involving self-represented litigants.  See Judicial Guidelines for Civil Hearings Involving Self-Represented Litigants § 2.1 (2006).  The Housing Court Department Standing Orders acknowledge the difficulties of pro se litigants, and provide for the allowance of late-filed motions and rescheduled hearings.  Housing Court Department Standing Order No. 1-04, VI. Scheduling Orders (2004), promulgated pursuant to G. L. c. 211B, § 10, and G. L. c. 185C, § 8A, provides:

"Summary Process . . .

"The Housing Court recognizes that a significant number of litigants appear in court pro se and are unfamiliar with the Uniform Rules of Summary Process. Housing Court judges shall apply the rules in a fair, reasonable and practical manner consistent with the legitimate interest of all parties.  Housing Court judges may allow late-filed motions, answers and other pleadings in the exercise of their sound discretion.  Housing Court judges may reschedule hearings in the exercise of their sound discretion."

As the standing order acknowledges, a significant number of litigants appear without counsel in the Housing Court and may be unfamiliar with the Uniform Rules of Summary Process.  We recognize that presiding over cases involving self-represented litigants can sometimes be difficult and challenging, particularly where one party is represented by counsel and the other is not.  Nevertheless, "[w]hile judges must apply the law without regard to a litigant's status as a self-represented party, see Mmoe v. Commonwealth, 393 Mass. 617, 620 (1985)

. . . , our courts have recognized that self-represented litigants must be provided the opportunity to meaningfully present claims and defenses. See Carter v. Lynn Hous. Authy., 450 Mass. 626, 637 n.17 (2008); Loebel v. Loebel, 77 Mass. App. Ct. 740, 743 n.4 (2010)." I.S.H. v. M.D.B., 83 Mass. App. Ct. 553, 560-561 (2013). "[T]he judge's role [regardless whether a party is represented by counsel or not] remains the same. The judge's function . . . is to be 'the directing and controlling mind' [during the proceedings]," Commonwealth v. Sapoznik, 28 Mass. App. Ct. 236, 241 n.4 (1990), quoting from Commonwealth v. Wilson, 381 Mass. 90, 118 (1980), and to provide a self-represented party with a meaningful opportunity to present her case by guiding the proceedings in a neutral but engaged way.

Here, the summary process action commenced in September of 2014. At the initial hearing, pursuant to Wilkerson's jury demand, a trial was set for September, 2015. In early July, 2015, Wilkerson was notified that a pretrial conference was scheduled for September 11, 2015. At the pretrial conference, the judge struck the jury demand and scheduled a bench trial for ten days hence because Wilkerson had not filed a pretrial conference memorandum, as required by the pretrial order that had been mailed to her two months ahead of the hearing. The

pretrial order's language included the potential sanctions for failure to comply.[13]

At the pretrial conference, despite her original demand, Wilkerson did not object when the judge stated that trial would proceed without a jury. See Northeast Line Constr. Corp. v. J.E. Guertin Co., 80 Mass. App. Ct. 646, 653 (2011). Wilkerson again represented herself at the bench trial and did not object to the striking of the jury demand. A party that files a demand for a jury trial, but then, without objection by the other parties, proceeds to a trial by the court without a jury, generally is deemed to have waived her right to a jury trial. See Walcott v. O'Connor, 163 Mass. 21, 22 (1895); Henderson v. D'Annolfo, 15 Mass. App. Ct. 413, 425 n.16 (1983); Islami v. Needham, 38 Mass. App. Ct. 442, 446 (1995).

"The right of a trial by jury is declared by part 1, art. 15 of the Constitution of the Commonwealth of Massachusetts, which provides that 'parties have a right to a trial by jury; and this method of procedure shall be held sacred.'" Northeast Line Constr. Corp. v. J.E. Guertin Co., 80 Mass. App. Ct. at 649. See New Bedford Hous. Authy. v. Olan, 435 Mass. 364, 370 (2001) ("Article 15 has been construed as preserving the right

_____

[13] "Sanctions. Failure to comply with this order, or failure to appear at the pretrial conference, may result in sanctions including but not limited to assessment of costs, entry of default or dismissal, and/or striking the jury demand."

to trial by jury in actions for which a right to trial by jury was recognized at the time the Constitution of the Commonwealth was adopted in 1780. . . . At that time, the common law afforded a tenant the right to trial by jury on a landlord's writ of entry, the procedure to evict a tenant after the expiration or termination of a tenancy. Thus, the right to trial by jury in eviction cases has been preserved under art. 15"). Striking a jury demand, where a party has a right to a jury and has claimed that right, must be approached with caution.

Sanctions were, of course, within the judge's discretion. A judge's decision to impose sanctions, however, must be examined under the principles of due process. See, e.g., Mass.R.Civ.P. 37(b)(2), as amended, 390 Mass. 1208 (1984) (sanction for violation of discovery orders must be "just"); Gos v. Brownstein, 403 Mass. 252, 257 (1988) (sanction of dismissal). Relevant factors in a due process examination include "the degree of culpability of the . . . party [to be sanctioned]; the degree of actual prejudice to the other party; whether less drastic sanctions could be imposed; . . . and the deterrent effect of the sanction." Keene v. Brigham & Women's Hosp., Inc., 56 Mass. App. Ct. 10, 21 (2002), S.C., 439 Mass. 223 (2003).

In considering the culpability of the party, it is not contested that Wilkerson called the court and came to the court in an effort to understand what was required of her.  The notice of pretrial conference includes, among other things, the name of the court contact person and telephone number and, in fact, encourages parties to call the court contact person with any questions.  Wilkerson told the judge that she had been advised by court staff to appear on the pretrial conference date.  With regard to the other factors, there is nothing in the record demonstrating that CMJ suffered any actual prejudice.  CMJ had already filed proposed jury instructions.  The notice of pretrial conference order did not require Wilkerson to propose jury instructions.[14]  There is no indication in the record that the judge weighed any lesser sanctions.  There is also no indication that the sanction of striking the jury demand in these circumstances served any deterrent effect.

It is without question that judges have the inherent authority to do what is necessary to "achieve the orderly and expeditious disposition of cases."  Bower v. Bournay-Bower, 469 Mass. 690, 699 (2014) (quotation omitted).[15]  However, that

_____

[14] The notice instructed the parties to include in their pretrial conference memoranda "the party's proposed jury instructions and verdict form (if applicable)."

[15] See, e.g., Higgins v. Boston Elev. Ry. Co., 214 Mass. 335, 336 (1913) ("[W]ithin reasonable limits . . . the courts by

authority is not without limit, and when the considerations relevant to a due process examination of the sanctions are considered against the backdrop of this particular case, they tip in favor of Wilkerson.  We conclude that, in these circumstances, Wilkerson's jury demand should not have been struck before considering lesser sanctions.

Conclusion.  The judgment awarding possession and costs to the plaintiff is vacated, and the matter is remanded for further proceedings consistent with this opinion.

So ordered.

---

rule may regulate the means by which the right to trial by jury shall be exercised or obtained").  See also New Bedford Hous. Authy. v. Olan, 435 Mass. at 370 ("The Legislature may impose reasonable conditions on a tenant's right to trial by jury before eviction, such as requiring payment of all rents due the landlord").