SULLIVAN, J.
*682 Three months into Keith G. Mello's occupancy of a one-bedroom apartment at the Caffrey Towers development (premises or apartment), the Brockton Housing Authority (BHA) filed an action pursuant to G. L. c. 139, § 19, to void his tenancy. Following a trial, a judge of the Southeastern Housing Court ruled that Mello "engaged in conduct, and allowed his guests to engage in conduct, which constitutes the keeping of controlled *683 substances in the premises." She entered a judgment voiding the lease and permanently enjoining Mello from entering any portion of Caffrey Towers, a Federally subsidized housing development for the elderly and the disabled. See New Bedford Hous. Authy. v. Olan, 435 Mass. 364, 369, 758 N.E.2d 1039 (2001) (Olan ). Mello appeals from the final judgment.[1] We affirm.
Background. We summarize the facts as found by the judge. Dennis Sheedy, a BHA asset manager, observed Mello's guests arriving at Caffrey Towers in an impaired state, and unwilling (or unable) to cooperate with security. On December 1, 2015, Anthony Giardini, a Brockton police officer who served as the community liaison to the BHA conducted an investigation into complaints in or about the premises. As he approached Mello's apartment, he heard *1234 loud voices coming from inside and smelled the odor of "some sort of substance."[2]
After entering the apartment, Officer Giardini saw three people, including Mello, sitting in a room. There was smoke that smelled like marijuana and crack cocaine. He observed drug paraphernalia in plain view, including a flat mirror "lined horizontally," lying on a room partition, a debit card, and the remains of what could be a filter for a crack cocaine pipe. He also saw two daggers, one of which was next to the mirror within reach of Mello, who was in "an intoxicated state." Officer Giardini concluded that those present in the apartment had been smoking crack cocaine and marijuana and that the complaints he had been receiving were valid.
On December 21, 2015, Officer Giardini returned to the apartment to find paramedics, police, and two unconscious people. He concluded that the two had used heroin based on their responses to the administration of Narcan to reverse an opioid overdose, their physical appearance, and the syringes in their backpacks.[3] Mello was present in the apartment, which was in the same general condition; the horizontal mirror was still there. In Giardini's opinion, the apartment was fashioned in such a way as to be used to consume narcotics.
Officer Giardini subsequently filed criminal complaints against Mello, charging him with disturbing the peace, maintaining a *684 disorderly house, and knowingly being present where heroin was kept. The charges were pending during the § 19 proceedings, which began with the complaint on January 26, 2016, and concluded on February 18, 2016, with the issuance of the judge's findings and rulings. Although the judge granted a brief continuance when Mello expressed his desire to testify, Mello did not testify in the § 19 proceeding because it progressed quickly and the criminal charges remained pending.
Discussion. 1. Mootness. The BHA urges us to dismiss the appeal as moot. Mello's eviction did not render the appeal moot. Although Mello no longer resides in his unit, see note 1, supra, he has a protectable property interest in his public housing tenancy. See Olan, 435 Mass. at 370 n.9, 758 N.E.2d 1039. Were Mello to succeed on appeal, he would be entitled to be "housed in the next available unit of suitable size of the housing authority." General Laws c. 121B, § 32, seventh par. Thus, Mello has a continuing personal stake in the outcome of this litigation. See New Bedford Hous. Authy. v. Olan, 50 Mass. App. Ct. 188, 194 n.11, 736 N.E.2d 410 (2000), S.C. 435 Mass. 364, 758 N.E.2d 1039 (2001).
2. Keeping. The sole issue on appeal is the validity of the judge's ultimate finding that Mello kept controlled substances in the premises within the meaning of § 19.
As amended in 1985, § 19 provides in pertinent part, that "[i]f a tenant or occupant of a building or tenement, under a lawful title, uses such premises or any part thereof for the purposes of ... the illegal keeping, sale or manufacture of controlled substances, as defined in [G.L. c. 194C § 1.] ... such use or conduct shall, at the election of the lessor or owner, annul and make void the lease." See St. 1985, c. 421, § 3. Because neither § 19 nor G. L. c. 94C § 1, the Controlled Substances Act, defines "keep" or "keeping," we turn to the usual rules of statutory construction.
*1235 Section 19, most recently amended by St. 1995, c. 179, § 13, is part of a comprehensive legislative scheme that provides criminal penalties for certain nuisances and criminal acts, as well as "equitable relief in furtherance of the purpose of the statute." See Olan, 435 Mass. at 369, 758 N.E.2d 1039. As part of this comprehensive scheme, the Legislature provided the additional remedy of a private right of action to evict a tenant who violates the statute, and upon a finding of a violation, grants the lessor or owner immediate possession.
id="p685" href="#p685" data-label="685" data-citation-index="1" class="page-label">*685[4] See ibid. ; G. L. c. 139, § 19. "[W]here two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." Federal Natl. Mort. Assn. v. Hendricks, 463 Mass. 635, 641, 977 N.E.2d 552 (2012), quoting from Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513-514, 333 N.E.2d 450 (1975). See Wing v. Commissioner of Probation, 473 Mass. 368, 373, 43 N.E.3d 286 (2015). See generally State Bd. of Retirement v. Finneran, 476 Mass. 714, 719, 71 N.E.3d 1190 (2017). We therefore look to other sections of G. L. c. 139, and related statutes.
Other nuisances falling directly under § 19, include the keeping of a place of prostitution, the illegal keeping or sale of alcoholic beverages, or the illegal keeping of certain weapons. See G. L. c. 139, §§ 4, 14, 16A.[5] We consider the cases defining the term "keeping" under these statutes for guidance.
"To 'keep or maintain' a nuisance imports the concept of control by the defendant over the place of the nuisance, as well as the requirement that the illegal activities that render the premises a common nuisance take place over time." Commonwealth v. Reid, 73 Mass. App. Ct. 423, 426, 898 N.E.2d 520 (2008).[6] This has been the law in the Commonwealth for over 150 years.[7] Commonwealth v. Wetherell, 340 Mass. 422, 164 N.E.2d 889 (1960), quoting from Commonwealth v. Charlie Joe, 193 Mass. 383, 386, 79 N.E. 737 (1907). See Commonwealth v. Lambert, 12 Allen 177, 179, 94 Mass. 177 (1866) ("[T]he permission by the keeper of a house of a single act of illicit intercourse within it does not of itself constitute the offense"); Chase v. Proprietors of Revere House, 232 Mass. 88, 95, 122 N.E. 162 (1919) ("We assume that a single act of illicit intercourse may of itself be insufficient to *686 establish responsibility, but whether a nuisance as defined by the statute exists is a question of fact on all the evidence ...").
Mello contends that evidence of use over a period of time was lacking. "In reviewing a matter where[ ] the trial judge *1236 was the finder of fact, the findings of fact ... are accepted unless they are clearly erroneous and we review the judge's legal conclusions de novo." CMJ Mgmt. Co. v. Wilkerson, 91 Mass. App. Ct. 276, 277 n.2, 75 N.E.3d 605 (2017), quoting from Allen v. Allen, 86 Mass. App. Ct. 295, 298, 16 N.E.3d 1078 (2014). We find no clear error in the judge's finding that Mello "engaged in conduct ... which constitutes the keeping of controlled substances in the premises."[8]
As the judge found, Mello was not an unwitting bystander to covert drug use by occasional visitors. The judge inferred that Mello, the sole tenant in control of the premises, had himself used the premises to consume or to possess controlled substances, and invited others to do likewise, on two occasions over the course of a month. The evidence regarding the setup of the apartment, the mirror, the debit card , and the daggers also supported the inference that Mello used the apartment for the purpose of consuming marijuana or cocaine over a period of time.
Moreover, Mello declined to testify in the eviction proceeding. The evidence offered by the BHA would have been a "fair subject of comment" by Mello. Custody of Two Minors, 396 Mass. 610, 616, 487 N.E.2d 1358 (1986). The judge was entitled to draw a negative inference from the failure to testify. See Singh v. Capuano, 468 Mass. 328, 333, 10 N.E.3d 1074 (2014) ; Adoption of Talik, 92 Mass. App. Ct. 367, 371, 84 N.E.3d 889 (2017). The judge did not err in entering judgment for the BHA voiding Mello's lease and permanently enjoining and restraining him from entering or trespassing on any portion of the premises.
Judgment affirmed.

After a number of postjudgment proceedings not relevant to the issues before us, the trial judge reinstated Mello's appeal, but denied his motion to stay the execution for possession, which issued on July 28, 2016.

Officer Giardini has significant training in "street level crimes," including undercover narcotics work.

Both were subject to BHA no trespass orders and were in the development unlawfully.

Before the operative amendment a landlord was permitted to "make immediate entry without legal process." Olan, supra at 369, 758 N.E.2d 1039. The 1995 amendment curtailed self-help evictions, but granted a private remedy even in those situations where there was no lease provision that barred the conduct. See ibid; St. 1995, c. 179, § 13.

Other statutes bar the keeping of additional nuisances, such as gaming, see G. L. c. 271, §§ 5, 17, or keeping a "house of ill fame which is resorted to for prostitution or lewdness." G. L. c. 271, § 24.

As a matter of criminal law, the rule of lenity requires that the accused have knowledge of the illegal activity. See Commonwealth v. Buckley, 354 Mass. 508, 510, 238 N.E.2d 335 (1968). Here there is no dispute regarding Mello's knowledge of the presence of controlled substances, or his control over the premises.

We note that this case involves only "keeping", not sale or manufacture. What constitutes "keeping" is by definition a fact specific inquiry, taking into account the totality of the circumstances.

We agree with Mello that there was insufficient evidence that the guests in the premises were tenants or occupants. Their conduct could not form the basis for voiding the lease under § 19. See Boston Hous. Authy. v. Guirola, 410 Mass. 820, 823-824, 575 N.E.2d 1100 (1991). However, the judge did not ground her eviction decision on their conduct, but on the personal acts of Mello. The judge also found that Mello "allowed his guests to engage in" keeping controlled substances on the premises. Because it is not necessary to our decision, we do not reach the question whether allowing guests to keep controlled substances on the premises is itself enough to sustain an action under § 19.