NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1158

JEFFREY A. SHAKER

vs.

AMY VICKERY & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant tenants appeal from a Housing Court summary process judgment, entered after a trial, that awarded possession of the leased premises and costs to the plaintiff Jeffery A. Shaker (landlord) and dismissed the tenants' counterclaims without prejudice.  The judge ruled that the tenants had violated a lease provision stating, with respect to the second floor of a barn on the leased premises, that "[second floor] of barn is not to be used as a dwelling."  We affirm the judgment.

Our review is made difficult by the tenants' failure to file a record appendix as required by Mass. R. A. P. 18 (a), as

---

[1] Ashleigh Jones and Adam Bonaventura.

appearing in 481 Mass. 1637 (2019).  It is "a fundamental and long-standing rule of appellate civil practice" that an appellant has an obligation "to include in the appendix those parts of the [record that] . . . are essential for review of the issues raised on appeal."  Shawmut Community Bank, N.A. v. Zagami, 30 Mass. App. Ct. 371, 372-373 (1991), S.C., 411 Mass. 807 (1992).  We nevertheless do our best to address the principal issues raised in the brief filed by tenant Adam Bonaventura.[2]

Bonaventura argues that the barn's second floor lacked a permanent cooking apparatus and thus failed to meet the building code definition of "dwelling unit" as "[a] single unit providing complete, independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation."[3]  On this basis, Bonaventura argues that the judge erred in finding that tenant Ashleigh Jones was using the second floor as a dwelling.

---

[2] We refer specifically to Bonaventura here because only he signed the brief.  He is not an attorney and therefore cannot represent the other tenants.  Our analysis and the result we reach would be the same, however, if Vickery and Jones had also signed the brief.

[3] Massachusetts has adopted, with certain modifications, the International Building Code-2021 (IBC).  See 780 Code Mass. Regs. § 101.1 (2017).  The quoted definition appears in section 202 of the IBC.

2

This argument confuses the question of the second floor's status as a legal matter under the building code with that of its use as a factual matter under the lease.[4]  The judge found that the landlord had observed sleeping quarters, a bed, and personal clothing on the second floor.  Jones admitted that she had slept and showered in the barn.  Despite the landlord's request that Jones relocate to the main house, he thereafter observed no bedroom set up for her there.  The landlord also received a text message from Bonaventura stating that Jones's moving into the house was "not an option" because Jones and the third tenant, Amy Vickery, were not speaking to each other.

Based on these facts, the judge could reasonably conclude that, even if the second floor did not contain all the facilities necessary to meet the building code's legal definition of dwelling unit, Jones was "us[ing] [it] as a dwelling," as that phrase was used in the lease.  In other words, the lease did not state that only if the barn's second floor were used for every activity listed in the building code definition -- "living, sleeping, eating, cooking and sanitation"

---

[4] Bonaventura's brief cites several cases in support of his argument, but none of them has any apparent relevance to this issue; none of them even mentions the word "dwelling."  See New Bedford Hous. Auth. v. Olan, 435 Mass. 364 (2001); Mastrullo v. Ryan, 328 Mass. 621 (1952); Solomon v. Birger, 19 Mass. App. Ct. 634 (1985).

-- would the second floor be "used as a dwelling." We see no error in the judge's conclusion that the tenants violated the lease.[5]

Bonaventura further argues that, at trial, the landlord offered a text exchange in evidence despite not having provided it to the tenants before trial. Bonaventura suggests that he was thereby unfairly deprived of the opportunity to introduce the full exchange in evidence, which in turn led the judge to misinterpret the portion of the exchange that was before her. What is missing from Bonaventura's argument is any citation to anything in the record showing that he submitted discovery requests to the landlord, that the landlord failed to properly respond to those requests, and that Bonaventura timely called that failure to the judge's attention. Absent such a showing, we have no basis to conclude that there was any error or

---

[5] Bonaventura's brief mentions in passing that, because the landlord sought to evict the tenants for "fault," i.e., violation of the lease, the judge ruled that by reason of G. L. c. 239, § 8A, the tenants could not pursue their counterclaims in this summary process case. The judge therefore dismissed the counterclaims without prejudice. This court recently concluded in a separate case that § 8A had no such broad effect. See Campbell v. Abdulla, 105 Mass. App. Ct. 790, 793-794 (2025). Nevertheless, Bonaventura does not ask that we vacate the dismissal of the counterclaims. Also, we take judicial notice that the tenants are currently pursuing what appear to be the same or similar counterclaims in Shaker vs. Bonaventura, Mass. Sup. Ct., No. 2473CV00313 (Bristol County). We therefore do not disturb the dismissal of the counterclaims in the Housing Court.

4

unfairness in the judge's consideration of the text messages offered by the landlord.

Finally, Bonaventura argues that in making her findings of fact, the judge "found the [landlord's] testimony to be credible which it was not." But "[w]e accord the credibility determinations of the judge who 'heard the testimony of the parties . . . [and] observed their demeanor' . . . the utmost deference." Ginsberg v. Blacker, 67 Mass. App. Ct. 139, 140 n.3 (2006), quoting Pike v. Maguire, 47 Mass. App. Ct. 929, 929 (1999). Bonaventura offers no sound reason for us to reject the judge's express decision to credit the landlord's testimony.

Judgment affirmed.

By the Court (Massing, Sacks & Allen, JJ.[6]),

Clerk

Entered: December 5, 2025.

---

[6] The panelists are listed in order of seniority.

5